## A98A0343. RICHARDS v. THE STATE.
(502 SE2d 519)

RUFFIN, Judge.

A jury found Steven Donlon Richards guilty of two counts of burglary, armed robbery, criminal attempt of theft by taking a motor vehicle, possession of a firearm during the commission of a crime, and simple assault. Richards appeals, asserting that the trial court improperly commented on the evidence, denied him the right to final argument at closing, and failed to charge impeachment based on the conviction of a crime. Richards further claims on appeal that the prosecution made improper comments during closing argument and that he was denied effective assistance of counsel. We affirm.

Viewed in a light most favorable to uphold the verdict, the evidence shows that in November 1993, Richards and his friend Brittney Tyler Harvey decided to move to Atlanta from Tampa, Florida. They loaded their belongings into a Ryder truck and drove to Atlanta. Upon their arrival, Harvey and Richards stayed in a motel off Fulton Industrial Boulevard. After a few days, their money began to run out, and Harvey and Richards discussed stealing. On November 8, 1993, Harvey and Richards burglarized a home in Douglasville and an apartment home off I-20 and Thornton Road.

Harvey testified at trial that they chose the first home because it was away from the street surrounded by trees. Richards gained entry into the house through a kitchen window, while Harvey waited in the Ryder truck. According to Harvey, Richards returned with a VCR and a remote control. While the owner of the home testified that a watch and some clothing were stolen in addition to the VCR and remote control, Harvey testified that she saw Richards remove only the VCR and remote from the home. Harvey further testified that after stealing the VCR, she and Richards pawned the VCR for $40 at a pawn shop two to three miles from the burglarized home.

Harvey said that she and Richards purchased some food with the $40 and then realized that they needed to commit another burglary to obtain more money. They drove around in their truck and stopped at the Crestmark Extended Stay Suites near I-20. According to Harvey, they chose Crestmark because it was away from the road and there were woods behind it. They searched the complex looking for an unoccupied apartment, and upon finding one, Richards broke into the back door of the apartment with a screwdriver. Harvey said she operated as a lookout while Richards gained entry. After he entered the apartment, Richards opened the front door for Harvey, at which time they began rummaging through the apartment. They took jewelry, a watch, a gun, a camera, keys to a Ford automobile, and a make-up luggage case. Harvey testified that she found a laundry basket which they used to carry the stolen items. However, during the

burglary, one of the occupants of the apartment, Furman Boyd, came home and heard noises coming from the kitchen. Harvey testified Richards confronted Boyd with Boyd's gun. Richards directed Boyd to lie down on the floor and hand over his wallet. Boyd complied. After Richards grabbed the wallet, Harvey testified that she and Richards ran from the apartment carrying the other stolen items and drove off in the truck. Harvey testified that they looked through the wallet and found credit cards, Boyd's Texas driver's license, and approximately $200 in cash.

Harvey further testified that after the second burglary, she and Richards decided to return to steal Boyd's Ford, because they had to return the Ryder truck and they needed transportation. Before dawn on November 9, 1993, Richards and Harvey returned to the Crestmark apartment complex and first tried the keys on a Ford in the parking lot with Texas license plates. When these keys did not work on the car, they began looking around for other Fords in the lot.

Karen Mims, the assistant manager of the Crestmark who lived in one of the apartments, testified at trial that around 6:30 a.m. she noticed a young man and a young woman looking into the windows and checking the locks of parked cars in the Crestmark parking lot. She contacted the police. When police arrived, Harvey and Richards ran in an attempt to elude them.

The police apprehended Harvey in the apartment complex after approximately 15 minutes, and Boyd confronted her about the burglary of his home. According to Boyd, Harvey told him that she was sorry and she did not realize that Richards was going to pull a gun on him. Additionally, according to Douglas County deputy sheriffs, Harvey signed a consent form, confessed to the crimes and advised officers that she and Richards pawned the VCR at a pawn shop several miles from the first burglary. The officers retrieved the VCR from the pawn shop. The deputy sheriffs also searched Harvey and Richards' motel room and found the stolen camera, gun and luggage case. Harvey pled guilty to two counts of burglary and criminal attempt to commit theft by taking a motor vehicle in connection with the events of November 8 and 9. The armed robbery count was dropped against Harvey in return for her testimony against Richards.

In addition to Harvey's testimony at trial, Boyd testified regarding his confrontation with Richards and the burglary of his home. Boyd stated that Richards was apprehended by police on the morning of November 9, 1993, and that Richards acted violently toward the officers. Boyd identified Richards as the burglar who threatened him with his gun and forced him to hand over his wallet.

The homeowner whose home was burglarized first by Richards and Harvey testified regarding the manner in which it appeared the

burglars gained entry and the items taken from her home.

Several deputy sheriffs from the Douglas County Sheriff's Department who responded to Mims' call regarding Harvey and Richards in the Crestmark parking lot testified concerning apprehending Richards. One deputy sheriff stated that Richards was captured and taken into custody at approximately 10:30 a.m. Several other deputy sheriffs testified that after Richards was captured, he spit and cursed at them.

According to one deputy sheriff, after Richards was taken to the sheriff's department, Investigator Hayes and other officers asked Richards to take off his hat. When he failed to comply, the deputy sheriff said, Hayes reached out to remove the hat and "Richards drew back as if he was going to strike or . . . was fixing to fight with Sgt. Hayes." Hayes testified that when he reached for Richards' hat, Richards slapped Hayes' arm and drew back as if he was planning to strike Hayes. This was the basis of Richards' simple assault charge.

We find that there is sufficient evidence for a rational trier of fact to find Richards guilty beyond a reasonable doubt of the crimes charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

1. Richards argues on appeal that he did not introduce any evidence at trial and thus the trial court erred in denying him the right to final argument.

" ' "Which party is entitled to open and close is oftentimes unclear, based on whether or not any admissible testimony or documentary evidence has been introduced by the accused. It is beyond question in this state that where an accused offers no testimony or evidence into the trial of a case, other than his own testimony, he has the right to the opening and closing arguments." [Cit.]' [Cit.]" *Seavers v. State*, 208 Ga. App. 711, 713 (3) (431 SE2d 717) (1993).

In this case, a portion of Richards' defense was that the deputy sheriffs beat him and broke one of his fingers. In response, the State introduced photographs of Richards' hands that showed that his fingers were not broken. As the prosecution addressed this issue during its closing argument, Richards' attorney held up Richards' hand and looked at the jury. The trial court immediately stopped the prosecution's closing and concluded that the defense attorney had introduced evidence into the case by intentionally showing the jury Richards' hand. Based on the defense attorney's actions, Richards lost his right to final closing argument. His defense attorney did not object to the trial court's decision.

Pretermitting whether Richards introduced evidence during closing arguments and thus lost the right to final argument, Richards' "failure to object to the court's ruling and limitation act[ed] as a waiver of any possible error. [Cit.] 'A party cannot during the trial

ignore what he thinks to be an injustice, take his chances on a favorable verdict, and complain later.' [Cit.] Matters not objected to at trial cannot be raised for the first time on appeal. [Cit.]" *Maxwell v. State*, 170 Ga. App. 831, 835 (3) (318 SE2d 650) (1984).

Even assuming Richards timely objected and his argument that he did not forfeit his right to final argument has merit, "in view of the overwhelming evidence of [Richards'] guilt, 'we find it highly probable that any error in this regard did not contribute to the verdict. [Cit.]' [Cit.]" *Seavers*, supra at 713 (3).

2. Richards asserts that the trial court improperly commented on the evidence in violation of OCGA § 17-8-57. This Code section provides that "[i]t is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused." OCGA § 17-8-57.

During defense counsel's closing argument in this case, he stated that the police had beaten Richards and they were attempting to cover it up. The State objected, arguing that defense counsel's claims were unsupported by the evidence. Defense counsel maintained that the photographs of Richards showed a broken finger and a beating. In ruling on the objection, the trial court stated "[t]here is no evidence of a broken finger. The only evidence of a broken finger is a question [defense counsel] had to one of the [witnesses]. And I'll charge the jury that questions of counsel and statement of counsel are not evidence. So, there is no evidence of that except for the evidence you attempted to put before the jury by raising his hand in front of them. So, you want to do it again [via the closing argument] and that is not evidence and the jury will not consider it as evidence." Defense counsel did not object at trial, claiming that the trial court's comments constituted a violation of OCGA § 17-8-57.

" ' "The question of whether (OCGA § 17-8-57) has been violated is not reached unless an objection or motion for mistrial is made." Therefore this enumeration is without merit.' [Cits.]" *Baker v. State*, 263 Ga. 79, 80 (2) (428 SE2d 340) (1993).

Even if Richards timely objected, we find there was no error. " 'Remarks of a judge assigning a reason for his ruling are neither an expression of opinion nor a comment on the evidence.' [Cit.]" *Stubbs v. State*, 220 Ga. App. 106, 109 (4) (469 SE2d 229) (1996).

3. Richards maintains that the trial court should have charged the jury on impeachment by conviction of a crime of moral turpitude. "Notwithstanding that the record does not reveal any request for such a charge, it does not appear that any witness was impeached by introduction of a certified copy of a prior conviction. Accordingly, the charge was not authorized by the evidence. [Cit.]" *Powell v. State*, 210 Ga. App. 409, 412 (4) (437 SE2d 598) (1993). See *Howard v. State*,

204 Ga. App. 743 (1) (420 SE2d 594) (1992) ("To impeach a witness by a prior conviction, the conviction must be proved by the record of the conviction itself. [Cits.]").

4. Richards asserts that the prosecution made various improper comments during its closing argument.

First, Richards claims that the prosecution violated OCGA § 17-8-76 by stating in closing to the jury that "[i]t's for you to . . . go back in the jury room and be weak and say . . . if we convict [Richards] of armed robbery he is going to prison for five years and I just can't have that on my conscience. . . ." Additionally, Richards maintains that the prosecution erred in utilizing the "golden rule" argument by inviting the jurors to place themselves in the victim's place in regard to the crimes. See *Horne v. State*, 192 Ga. App. 528 (2) (385 SE2d 704) (1989). Finally, Richards believed that the prosecution improperly argued that "[y]ou say that you would rather have the Steven Richards and the [defense attorneys] protect you from burglars, murderers, killers, thieves, child molesters and rapists than the [prosecutors and police officers]." However, the prosecution continued, when someone needs help or protection, he or she will be turning to the prosecutors and police officers.

Richards failed to object at trial to any of the prosecutor's comments. " 'The time to object to improper closing argument is when the impropriety occurs at trial, when the trial judge may take remedial action to cure any possible error. . . . When no timely objection is interposed, the test for reversible error is not simply whether or not the argument is objectionable, or even if it might have contributed to the verdict; the test is whether the improper argument in reasonable probability changed the result of the trial.' [Cit.]" *Hopkins v. State*, 227 Ga. App. 567, 568 (2) (489 SE2d 368) (1997).

"Pretermitting the question of whether the prosecutor's statement[s were] improper, in light of the overwhelming evidence of [Richards'] guilt, it is not reasonably probable that such statement[s] changed the result of the trial." Id.

5. Richards asserts that he was denied effective assistance of counsel. He maintains that his counsel was deficient in failing (1) to object to the prosecutor's improper arguments during closing, (2) to object to the trial court's ruling on Richards' right to final argument, (3) to raise as error during trial the court's commenting on the evidence, and (4) to request a jury charge on impeachment based on the conviction of a crime.

"A defendant claiming ineffective assistance of counsel must show (1) that his attorney's representation in specified instances fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." *Stephens v.*

*State*, 224 Ga. App. 184, 185 (3) (480 SE2d 235) (1997).

"The decisions on which witnesses to call, whether and how to conduct cross examinations, what jurors to accept or strike, what trial motions should be made, and all other strategies and tactical decisions are the exclusive province of the lawyer after consultation with his client." (Citations and punctuation omitted.) *Austin v. Carter*, 248 Ga. 775, 779 (2) (c) (285 SE2d 542) (1982). Here, defense counsel's decisions did not result from inadequate preparation but from choices of trial strategy and tactics. Id.

Furthermore, Richards has failed to show that, despite the overwhelming evidence of his guilt, there is a reasonable probability that but for his counsel's actions the results of the trial would have been different. *Stephens*, supra. Accordingly, we conclude that Richards was not denied effective assistance of counsel.

*Judgment affirmed. Pope, P. J., and Beasley, J., concur.*

DECIDED MAY 20, 1998.

*Jill L. Anderson, Virginia W. Tinkler*, for appellant.
*David McDade, District Attorney, William H. McClain, Assistant District Attorney*, for appellee.