A98A1796. PARRISH v. THE STATE.
(514 SE2d 458)

RUFFIN, Judge.

A jury found Earl Parrish guilty of rape and Parrish appeals, asserting numerous errors. Since Parrish's assertions lack merit, we affirm.

1. In claiming that the prosecution failed to carry its burden of proof, Parrish essentially challenges the sufficiency of the evidence. "On appeal the evidence must be viewed in the light most favorable to support the verdict, and appellant no longer enjoys a presumption of innocence; an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility." (Punctuation omitted.) *Griffis v. State*, 222 Ga. App. 322 (1) (474 SE2d 119) (1996).

So viewed, the evidence shows that in December 1995, the victim

broke off her engagement with Parrish, but continued to see him. On May 27, 1996, after spending Memorial Day weekend with Parrish, the victim informed him that she needed to leave to pick up her children from her ex-husband. According to the victim, Parrish became tearful and angry when she attempted to leave, took her keys, and threatened to kill her.

Without the keys to her truck, the victim started to leave on foot, but Parrish followed her in her truck, screaming obscenities. After the victim made it to her house, she called Parrish and asked him to leave her truck for her in a field by her house. Parrish complied with her request and the victim retrieved her truck from the field and drove to a gas station. The victim testified that while she was at the gas station, Parrish approached her with a knife, forced her into the truck, and drove her to his parents' house where he punched and kicked her in the face, back and ribs, and slammed her head into the stove. Thereafter, Parrish drove the victim to a deserted area where he stabbed her numerous times on her hands, arms, shoulders and back. Parrish told the victim to run and when she did not, he began throwing rocks at her and pushed her off of a bridge. The victim also testified that Parrish whipped her with a fishing rod and forced her to swim through a snake-filled swamp while he continued to throw rocks at her. According to the victim, Parrish then put sleeping pills in her mouth and made her drink some beer, and the next thing she knew she woke up in Parrish's house.

Parrish later drove the victim to a hotel in Savannah where, without her consent, he had intercourse with her. The victim testified that when she cried out "no, no, get off," Parrish "head butted" her on her right temple. The next day, Parrish took the victim to a hospital in Savannah. According to the victim, Parrish threatened to kill her if she told anyone what he had done. Parrish instructed her to tell the hospital staff that she had fallen on an oyster bed. The hospital staff, realizing that the victim's injuries were not consistent with such a fall, asked her what happened. After the victim attributed her injuries to Parrish, a nurse called the police. One of the emergency room nurses testified that the victim had "numerous bruises everywhere." The State introduced photographs into evidence that showed extensive bruises and numerous stab wounds and whip marks on the victim's body.

OCGA § 16-6-1 (a) provides that "[a] person commits the offense of rape when he has carnal knowledge of a female forcibly and against her will. Carnal knowledge in rape occurs when there is any penetration of the female sex organ by the male sex organ." Since the victim's testimony established every element of rape, her testimony alone is sufficient to support a finding of guilt beyond a reasonable

doubt. See *Thompson v. State*, 203 Ga. App. 339 (1) (416 SE2d 755) (1992).

2. In six enumerations of error, Parrish contends the trial court erred in admitting the testimony of Dr. Nagleberg, an expert witness who testified regarding "battered woman syndrome." Specifically, Parrish claims that the expert's testimony: (i) was neither necessary nor scientifically valid; (ii) placed his character into evidence; (iii) lacked the proper foundation; (iv) was premised upon a hypothetical that was not supported by the facts in evidence; (v) was improperly admitted because the expert never examined the victim; and (vi) impermissibly bolstered the victim's credibility.

During the trial, Parrish's attorney cross-examined the victim regarding her failure to seek help while she was being held by Parrish. Parrish's attorney pointed out that the victim had ample opportunity to seek help on the drive between Parrish's parents' house and the hotel in Savannah, since Parrish and the victim stopped at a restaurant, a gas station and a store. Thus, although Parrish did not testify or put up any witnesses, it is clear that part of his defense was to undermine the credibility of the victim based on the fact that she did not initiate an outcry for help.

Dr. Nagleberg, who had not examined either Parrish or the victim, testified generally about the profile of a typical abuser and the effects such abuse has on its victims. In questioning Dr. Nagleberg, the State asked Dr. Nagleberg whether the victim's failure to "make an outcry" made "any sense." Dr. Nagleberg responded that "even people who have been kidnapped and are exposed to public situations will frequently not ask for help." Dr. Nagleberg also testified about the characteristics of an abuser, stating that abusers "typically grow up in a home that has some sort of physical violence" and that "these men frequently have been in trouble with the police in past occasions." According to Dr. Nagleberg, "[f]requently, there is a history of alcohol or drug abuse" with batterers.

(i) With regard to Parrish's claim that the expert testimony was neither necessary nor scientifically valid, we note that "[e]xpert opinion testimony on issues to be decided by the jury . . . is admissible where the conclusion of the expert is one which jurors would not ordinarily be able to draw for themselves; i.e., the conclusion is beyond the ken of the average layman." *Smith v. State*, 247 Ga. 612, 619 (277 SE2d 678) (1981). In *Smith*, the Supreme Court concluded that testimony regarding battered woman's syndrome is admissible because the reasons why a battered woman "would not leave her mate, would not inform police or friends, and would fear increased aggression against herself, would be such conclusions that jurors could not ordinarily draw for themselves." (Punctuation omitted.) Id.

However, we recognize that expert testimony regarding "bat-

tered woman's syndrome" typically is introduced by a defendant who claims to be a victim of abuse in connection with establishing a defense of self-defense. See *Smith*, supra; *Smith v. State*, 268 Ga. 196 (486 SE2d 819) (1997); *Chapman v. State*, 259 Ga. 706 (386 SE2d 129) (1989); *Cox v. State*, 216 Ga. App. 86, 87 (2) (453 SE2d 471) (1995); *Pugh v. State*, 191 Ga. App. 394 (382 SE2d 143) (1989). In this case, however, the State used Dr. Nagleberg's testimony as an "affirmative weapon" against Parrish. See *Sanders v. State*, 251 Ga. 70, 75 (3) (303 SE2d 13) (1983).

Dr. Nagleberg's testimony served to create a "profile" of both the typical victim and abuser. Such a "profile" suggests to the jurors that the defendant shares the characteristics of the typical abuser and, as such, places the character of the defendant in issue. *Sanders*, supra at 76. Therefore, Georgia courts have limited the State's ability to use profile testimony against a defendant. See *Penson v. State*, 222 Ga. App. 253, 255 (1) (474 SE2d 104) (1996).

> Unless a defendant has placed his character in issue or has raised some defense which the profile is relevant to rebut, the state may not introduce evidence of the profile, nor may the state introduce character evidence showing a defendant's personality traits and personal history as its foundation for demonstrating the defendant has the characteristics of a typical profilist.

(Punctuation omitted.) Id.

In this case, Parrish's attorney sought to defend his client by undermining the victim's credibility through illustrating her failure to seek help. Accordingly, Dr. Nagleberg's testimony regarding the "learned helplessness" of women in abusive relationships was relevant to explain the victim's behavior. See *Hall v. State*, 196 Ga. App. 523, 526 (3) (396 SE2d 271) (1990) (expert evidence addressed the behavior of the victim rather than of the accused).

(ii) Nevertheless, we agree with Parrish that Dr. Nagleberg's testimony regarding the typical characteristics of an *abuser* improperly placed Parrish's character in issue. Specifically, Dr. Nagleberg's testimony regarding the typical batterer's drug and alcohol use was not necessary to rebut any defense or issue raised by Parrish. Thus, the trial court erred in failing to limit Dr. Nagleberg's testimony in this regard. Given the overwhelming evidence of Parrish's guilt, however, "we find that it is highly probable that the error did not contribute to the verdict." See *Sanders*, supra at 76.

(iii) & (iv) Parrish also claims that the State failed to lay the proper foundation for Dr. Nagleberg's testimony since the doctor never examined either the victim or Parrish. This contention lacks merit.

The opinions of experts, on any question of science, skill, trade, or like questions, shall always be admissible; and such opinions may be given on the facts as proved by other witnesses. The proper mode of examining a[n] expert, where he is not testifying from his own knowledge, is to ask him hypothetical questions.

(Punctuation omitted.) *Kimball v. State*, 63 Ga. App. 183, 185-186 (2) (10 SE2d 240) (1940).

(v) According to Parrish, he is entitled to a new trial on the grounds that the State, in posing its hypothetical question to Nagleberg, relied upon facts not in evidence. Assuming, without deciding, that Dr. Nagleberg based his opinion, in part, on facts not in evidence, this does not require reversal. "[T]he fact that an expert's opinion may be based in part on facts not in evidence goes to its weight, not its admissibility." *Roberson v. State*, 214 Ga. App. 208, 211 (8) (447 SE2d 640) (1994).

(vi) Parrish contends that Dr. Nagleberg improperly commented on the truthfulness of the victim. This contention also lacks merit. "Credibility of a witness is not beyond the ken of the jurors but, to the contrary, is a matter solely within the province of the jury. An expert witness may not testify as to his opinion of the victim's truthfulness." (Punctuation omitted.) *Jennette v. State*, 197 Ga. App. 580, 582 (2) (398 SE2d 734) (1990). However, the fact that expert testimony indirectly touches upon a witness' credibility does not render it inadmissible. See *Barlow v. State*, 270 Ga. 54, 55 (507 SE2d 416) (1998). As discussed, the trial court admitted Dr. Nagleberg's testimony for a proper purpose. Thus, the possibility that the testimony *may* have touched on the victim's credibility does not render it inadmissible. Id.

3. Parrish claims that the trial court erred in admitting evidence of his prior difficulties with the victim.

[E]vidence of the defendant's prior acts toward the victim, be it a prior assault, a quarrel, or a threat, is admissible when the defendant is accused of a criminal act against the victim, as the prior acts are evidence of the relationship between the victim and the defendant and may show the defendant's motive, intent, and bent of mind in committing the act against the victim which results in the charges for which the defendant is being prosecuted.

*Wall v. State*, 269 Ga. 506, 509 (2) (a) (500 SE2d 904) (1998). However,

the true test of admissibility is not the number of similarities between the crimes, but whether the evidence of prior

incidents was substantially relevant for some purpose other than to show that the defendant likely committed the crime because he is a person of bad character.

(Citation omitted.) *Simmons v. State*, 266 Ga. 223, 225 (2) (466 SE2d 205) (1996).

Parrish argues that this testimony should have been excluded because none of the prior incidents as described by the victim involved a sexual assault. However, Parrish failed to object when this evidence was admitted and, thus, waived this claim of error. *Baise v. State*, 232 Ga. App. 556, 561 (3) (502 SE2d 492) (1998).

4. In three separate enumerations of error, Parrish contends that the trial court erred in admitting evidence of similar transactions involving his ex-wife. The ex-wife testified that following the break-up of her marriage, Parrish had kidnapped her, threatened her while wielding a small axe, and raped her. According to Parrish, the State failed to provide adequate notice of its intent to introduce similar transactions. However, Parrish has not preserved this issue for review. "Although [Parrish] apparently made a lack of similarity objection at the pretrial similar transaction hearing, he waived this ground by failing to make this objection when the similar transaction evidence was introduced at trial." (Punctuation omitted.) *Davis v. State*, 229 Ga. App. 787, 789 (2) (494 SE2d 702) (1997).

Even if Parrish had preserved this objection for appellate review, it is without merit.

Uniform Superior Court Rule 31.3 (B) governs notice of the State's intent to introduce similar transactions evidence and provides in part: "The notice shall be in writing, served upon the defendant's counsel, and shall state the transaction, date, county, and the name[ ] of the victim[ ] for each similar transaction or occurrence sought to be introduced."

*Ramsey v. State*, 214 Ga. App. 743, 745 (2) (448 SE2d 790) (1994).

The apparent purpose of the rule is to provide a criminal defendant with fair and adequate notice of the State's intention to utilize evidence of prior similar transactions so that questions as to the admissibility of such evidence can be resolved before trial.

(Punctuation omitted.) Id.

Here, more than ten days before the trial, the State notified Parrish that it intended to introduce evidence of an "incident occurring in 1988 in which defendant raped his ex-wife . . . at knife point." In failing to provide the location and county where this offense

occurred, the State was not in technical compliance with the rule. However, "[t]he purpose of the rule is to provide the defendant with fair and adequate notice of the listed transactions so that questions of admissibility may be raised and addressed prior to trial." *Jackson v. State*, 217 Ga. App. 485, 489 (4) (458 SE2d 153) (1995). The State's notice served to give Parrish adequate notice of the similar transaction to be introduced. Accordingly, the trial court did not err in admitting the evidence. See *Jackson*, supra.

Parrish also asserts that the trial court did not make the requisite findings for admission of the similar transaction as required by *Williams v. State*, 261 Ga. 640, 641 (2) (409 SE2d 649) (1991). This assertion is without merit. Before the trial court finds that a similar transaction is admissible, the State must show that: (1) there is sufficient evidence that the similar transaction occurred; (2) the evidence is being offered for an appropriate purpose; and (3) there is a sufficient connection or similarity between the similar transaction and the crime alleged so proof of the former tends to prove the latter. See *Williams*, supra at 642-643.

During a pre-trial hearing on the admissibility of the similar transactions, the State explained that Parrish's ex-wife would testify that Parrish had raped her at knifepoint. The State made clear that it was offering this testimony to establish Parrish's intent, bent of mind and course of conduct. Based on the State's proffer, the trial court found that the State had satisfied the three elements of *Williams*. We agree. Accordingly, the trial court did not err in admitting the similar transaction evidence. See *Fetty v. State*, 268 Ga. 365, 369 (5) (489 SE2d 813) (1997).

Finally, Parrish contends that the trial court erred in failing to perform a balancing test in accordance with *Oller v. State*, 187 Ga. App. 818, 820 (2) (371 SE2d 455) (1988). In *Oller*, we recognized that the lapse of time between the similar transaction and the crime alleged is a factor to be taken into consideration when the trial court balances the probative value of the prior incident against its potential prejudicial impact. Although he does not argue this in his brief, Parrish apparently suggests that the 1988 rape of his ex-wife was too remote in time to be admissible.

We note, however, that Parrish failed to object to his ex-wife's testimony on this ground below. Thus, the trial court never had an opportunity to consider the length of time between the two incidents. "In order to preserve an objection upon a specific ground for appeal, the objection must be made at trial upon that specific ground. Objecting on specific grounds waives the grounds not asserted." (Citations and punctuation omitted.) *Campbell v. State*, 228 Ga. App. 258, 263 (3) (b) (491 SE2d 477) (1997). "The rule is that the scope of review is limited to the scope of the ruling in the trial court as shown

by the trial record and cannot be enlarged or transformed through a process of switching [or] shifting." (Punctuation omitted.) *Robinson v. State*, 208 Ga. App. 528, 530-531 (4) (430 SE2d 830) (1993).

5. In a related enumeration of error, Parrish claims that the trial court gave an erroneous limiting instruction to the jury regarding the use of similar transactions evidence. Before Parrish's ex-wife took the stand, the trial court told the jury that evidence of similar transactions ordinarily "may not be used because it brings the defendant's character into question, which is not a valid criteria for you to use in deciding his innocence or guilt." The trial court went on to explain that similar transaction evidence only could be used "for the limited purpose of showing, if it does, the state of mind or bent of mind or motive or intent of the defendant or the course of conduct of the defendant as relates to his action." Parrish neither objected to this instruction, nor did he request that any additional instruction be given. "Having failed to timely inform the trial court of any further action [he] desired taken, [Parrish] cannot now complain." *Wilkins v. State*, 220 Ga. App. 516, 518 (2) (469 SE2d 695) (1996).

6. In two enumerations, Parrish argues that the trial court erred in barring him from introducing evidence of the victim's drug use while allowing into evidence testimony regarding his own drug use. We note at the outset that "[w]hether to admit evidence is a matter that rests in the sound discretion of the trial court." *Price v. State*, 269 Ga. 373, 374 (2) (497 SE2d 797) (1998). Such discretion will not be reversed absent abuse, and we find no abuse here, in this instance.

In this case, the only mention of Parrish's drug use was when Parrish's ex-wife testified regarding his stint in rehabilitation. According to this witness, she had a phone conversation with Parrish several months before the alleged rape during which he told her that the victim said she would not see him until he finished rehabilitation. According to the ex-wife, although Parrish had finished rehabilitation early, the victim still would not see him. The ex-wife testified that Parrish "was getting very angry and said that he was going to kill [the victim]."

In admitting this testimony, the trial court did not abuse its discretion because it served to explain Parrish's motive. "Evidence which is relevant to an issue in a case is not rendered inadmissible by the fact that it incidentally puts the defendant's character in issue." *Johnson v. State*, 260 Ga. 457, 458 (2) (396 SE2d 888) (1990) (state is entitled to present evidence of motive).

In a pre-trial motion, Parrish sought permission to introduce evidence of the victim's prior drug use and of her alleged relationship with a drug dealer. The trial court excluded the evidence as irrelevant. "The right to a thorough and sifting cross-examination is not

abridged when the trial judge limits it to relevant matters." (Punctuation omitted.) *Dunton v. State*, 216 Ga. App. 191 (453 SE2d 800) (1995).

> Moreover, whether the victim used drugs in the past or was generally knowledgeable about illegal drugs is irrelevant to the issue of whether [Parrish] committed the offense of rape. . . . Rape is no more lawful when committed against a woman who uses [drugs] than it is against one who does not use [drugs]. Furthermore, instances of specific misconduct may not be used to impeach a witness' character or veracity unless the misconduct has resulted in the conviction of a crime involving moral turpitude. Since no such conviction has been shown to exist in this case, we find no error in limiting [Parrish's] cross-examination of the victim.

(Citation and punctuation omitted.) Id.

7. In two enumerations of error, Parrish claims that the State committed reversible error when it asked Dr. Nagleberg how long it would have taken him to examine Parrish. According to Parrish, this question placed his character in evidence by implying that he could have visited a psychologist. Parrish also asserts that the State's question was tantamount to a comment on his failure to testify. Pretermitting the issue as to whether the State's question was improper, Parrish waived the issue by failing to raise an objection at trial. *Hardegree v. State*, 230 Ga. App. 111 (1) (495 SE2d 347) (1998).

8. Parrish contends that the trial court erred in admitting evidence of his "war record." Specifically, Parrish challenges the admissibility of the victim's testimony that, while Parrish was holding her at knifepoint, he said "I could kill you so easily." According to the victim, Parrish then told her that, while in the Marines, he had killed a girl and had sex with her corpse. Contrary to Parrish's contention, testimony that he threatened the victim prior to raping her was admissible over his objection as part of the res gestae even if such evidence incidentally placed his character in evidence. See *Bohannon v. State*, 208 Ga. App. 576, 581 (3) (431 SE2d 149) (1993). Thus, the trial court did not err in admitting this testimony.

9. Parrish contends the trial court also erred in permitting the State to show the jury enlarged photographs of the victim and the crime scene during its closing argument. The photographs had already been admitted into evidence. The State did not seek to alter the photographs, but rather sought to show the photographs to the jurors through the use of a projector to enlarge the image. This argument lacks merit.

> The photographs having been admitted . . . it is not error that the state was able to present them in such manner that the entire jury, at one time, might view them. Indeed, the use of overhead projectors in courtrooms presents a far more orderly opportunity to display matters under investigation than the traditional mode, which is either to hold up a single photograph before a jury (where but few jurors are close enough to see it), or to pass the photographs from juror to juror while testimony is being taken, or to accumulate all photographs until the completion of testimony and introduce them en gross relying upon the jurors' ability to recall the testimony in connection with the numbered exhibits.

*Dalton v. State*, 251 Ga. 641, 642 (2) (308 SE2d 835) (1983).

10. Parrish claims that he received ineffective assistance from his trial counsel.

> A defendant claiming ineffective assistance of counsel must show (1) that his attorney's representation in specified instances fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different.

*Richards v. State*, 232 Ga. App. 584, 588 (5) (502 SE2d 519) (1998). "In addition, there is a strong presumption that trial counsel's performance falls within the wide range of reasonable professional assistance and that any challenged action might be considered sound trial strategy." (Punctuation omitted.) *Brooks v. State*, 232 Ga. App. 115, 119 (15) (501 SE2d 286) (1998). "[A] trial court's finding that a defendant has not been denied effective assistance of trial counsel will be affirmed unless clearly erroneous." *Horne v. State*, 231 Ga. App. 864, 866 (2) (501 SE2d 47) (1998).

At the hearing on Parrish's motion for new trial, Parrish cited multiple instances in which he claimed his attorney provided ineffective assistance including, inter alia: (1) failing to meet with him often enough to adequately discuss the case; (2) failing to call numerous witnesses; and (3) refusing to allow him to testify. The trial attorney testified that he had met with Parrish on ten occasions to discuss the case. According to the attorney, most of the witnesses Parrish wanted to call would testify regarding the victim's bad character and/or her drug use. In addition, the attorney stated that the decision not to call witnesses was a tactic to preserve closing argument. Finally, the attorney indicated that he advised his client not to testify, but that

the decision was Parrish's and that it was Parrish who elected not to testify. The trial court denied Parrish's motion.

Decisions regarding which witnesses to call and all other trial strategies are the exclusive province of the attorney after consultation with his client. See *Richards*, supra at 589. Here, trial counsel's decisions were strategic in nature and were not the result of inadequate preparation. Thus, the trial court did not err in denying Parrish's ineffective assistance of counsel claim.

11. Over seven months after his appellate attorney filed his appellate brief to this Court, Parrish, proceeding pro se, filed a motion seeking leave to file supplemental enumerations of error and a supplemental brief addressing these additional errors.[1] Pursuant to Court of Appeals Rule 24, a party may request permission to file supplemental briefs. However, enumerations of error may not be amended or supplemented after the time for filing has expired. See *Daniel v. State*, 228 Ga. App. 634, fn. 1 (492 SE2d 542) (1997); *McGraw v. State*, 199 Ga. App. 389, 390 (405 SE2d 53) (1991); *Driver v. State*, 188 Ga. App. 301 (1) (372 SE2d 841) (1988). Therefore, Parrish is not allowed to file either additional enumerations of error or a brief addressing such errors.

*Judgment affirmed. Pope, P. J., and Beasley, P. J., concur.*

DECIDED MARCH 11, 1999 —
RECONSIDERATION DENIED MARCH 30, 1999 — 

Earl Parrish, *pro se.*

*Spencer Lawton, Jr., District Attorney, Melanie Higgins, Assistant District Attorney*, for appellee.

---

[1] We denied appellant's Motion for Substitution of Counsel on Appeal and his Motion for Extension of Time to File a Pro Se Brief and Enumeration of Errors by Order dated September 22, 1998. Since that date, appellant has filed a Motion for Supersedeas/Stay of Proceedings and a Motion for Remand with accompanying briefs. In his briefs, however, it is clear that appellant still seeks to supplement his enumerations of error.