A06A0202. HOUSING AUTHORITY OF THE CITY OF MACON
v. YOUNIS et al.
(631 SE2d 802)

MILLER, Judge.

The Housing Authority of the City of Macon (the "Authority") initiated condemnation proceedings to acquire two adjacent tracts of land owned by Amile D. Younis and others (collectively referred to herein as "the Younises"). The City of Macon (the "City") previously owned the land, which was subject to a 1984 federal desegregation order that required it to be used as a public playground. In light of the federal desegregation order restricting the use of the property, the Authority filed a motion in limine in the condemnation action to exclude any evidence of the property's alleged commercial value. The trial court, however, denied the motion. Since the trial court ignored the effect of the federal order that clearly eliminated any commercial value that could be associated with the property, the court erred in denying the Authority's motion in limine. We therefore reverse.

A motion in limine should be granted when "there is no circumstance under which the evidence under scrutiny is likely to be admissible at trial." *Andrews v. Wilbanks*, 265 Ga. 555, 556 (458 SE2d 817) (1995). Although a trial court has broad discretion to determine the admissibility of evidence, irrelevant evidence that does not bear directly or indirectly on the questions being tried should be excluded. See OCGA § 24-2-1; see also *Ballew v. Kiker*, 192 Ga. App. 178, 179 (2) (384 SE2d 211) (1989) (trial court properly excluded irrelevant evidence).

The record reveals that in 1984, the Federal District Court for the Middle District of Georgia entered a racial desegregation order, which required the Bibb County Board of Education (the "School Board") to tear down a school on land that it owned and deed the land

to the City for use as a public playground. See *Adams v. Bd. of Public Ed.*, 585 FSupp. 215, 222 (M.D. Ga. 1984), aff'd, 770 F2d 1562 (11th Cir. 1985) (desegregation order required School Board "to deed the property to the City of Macon for use as a public playground"). Pursuant to the federal court order, in September 1985 the School Board transferred the land to the City, noting the specific restriction that "the property hereby conveyed is to be developed and used as a public playground."

In November 1987, the School Board quitclaimed all of its remaining interest in the land to the City, claiming that in doing so it was also releasing the land "from all of the restrictions found in [the September 1985 deed]." The City never turned the property into a public playground and left the land vacant. In 1989, the City sold a portion of the property to the Younises for $3,000. The Younises also purchased an adjoining piece of the former City property, and did not make any visible improvements to the land.

On March 26, 2002, the Authority initiated separate condemnation proceedings to acquire both of the Younises' properties. Special masters rendered awards with respect to both properties, and the cases were consolidated for appeal to the Superior Court of Bibb County.

In the appeal to superior court, the Younises argued that the special masters had awarded too small an amount for the purchase of their properties. Specifically, the Younises contended that since the property at issue consisted of two adjoining tracts of land, the tracts could be combined to create increased potential commercial value. The Authority filed a motion in limine to prohibit the introduction of any evidence relating to the alleged commercial value of the property, noting that the 1984 federal desegregation order required that the property be used only as a public playground. The superior court denied the motion, but certified its decision for immediate review by this Court.

The Authority argues that its motion in limine should have been granted in light of the 1984 federal desegregation order restricting use of the property at issue for a public playground. We agree.

The federal order containing the land-use restriction was neither challenged nor otherwise rendered unenforceable at the time the Authority initiated the condemnation proceedings. Indeed, the School Board's purported 1987 transfer of the property to the City free "from all restrictions" was ineffectual, because the School Board did not have the power to unilaterally extinguish a court-imposed restriction on the use of the land through a quitclaim deed. See, e.g., *Canoeside Properties v. Livsey*, 277 Ga. 425, 428 (2) (589 SE2d 116) (2003) ("One cannot transfer or convey an interest in real property greater than he has.") (citation omitted). Nor is there evidence that anyone took any

legal action to have the federal order declared void. Thus, the federal order was still in effect at the time that the Younises purchased the properties from the City, and the Younises did not acquire the properties from the City free of the federally imposed land-use restriction.[1]

Since the properties were restricted for use as a public playground, there was no basis for the admission of evidence regarding any potential commercial value that the properties could have had under other, nonexistent circumstances. See *Wright v. MARTA*, 248 Ga. 372, 373 (283 SE2d 466) (1981) ("Where there is a physical taking of land, just and adequate compensation for the taking is determined as of the date of taking.") (citations omitted).

Moreover, the Younises' argument that the Authority has no standing to enforce the federal order is misplaced. The issue is not whether the Authority has the power to *enforce* the federal order, but whether the Authority has pointed to the *existence* of an *enforceable* court order that defines the parameters by which the properties at issue may be valued. The Authority has done this, and there is no evidence that the federal court order is not enforceable with respect to the properties. The federal order makes clear that the properties must be used as a public playground, which renders irrelevant any evidence relating to the alleged potential commercial value of the properties. As such, there was no circumstance under which the evidence at issue was likely to be admissible, and the trial court erred in denying the Authority's motion in limine. See, e.g., *Unified Govt. of Athens-Clarke County v. Watson*, 276 Ga. 276, 277 (577 SE2d 769) (2003) ("Testimony about the 'highest and best use' of property . . . is not admissible when it involves a use precluded by applicable zoning regulations . . . [unless] the condemnee [can] show that a change in zoning to allow the usage is probable. . . .") (citations omitted); *Ga. Transmission Corp. v. Barron*, 255 Ga. App. 645, 647 (566 SE2d 363) (2002) (in condemnation proceeding, trial court erred in admitting testimony on potential commercial value of property in area that was zoned residential at time of taking where prospect of rezoning was speculative).

*Judgment reversed. Johnson, P. J., and Ellington, J., concur.*

---

[1] Indeed, the Younises admit that, with the assistance of counsel, they were made aware of the quitclaim deed purporting to release the property to the City "free from all of the restrictions found in [the September 1985 deed]" prior to their 1989 purchase of the properties. The September 1985 deed, by its own terms, was made "[p]ursuant to the direction of an Order of the United States District Court for the Middle District of Georgia, Macon Division[,] in the case of Julius Adams, et al., Civil Action No. 19026 v. The Board of Public Education and Orphanage for Bibb County." Thus, it is clear that the Younises were put on notice of the specific federal court order imposing a restriction on the properties at the time of their purchases.

DECIDED MAY 31, 2006.

*James, Bates, Pope & Spivey, Stephen L. Dillard, Thomas W. Huyck*, for appellant.

*Bush, Crowley, Leverett & Johnson, Charles M. Leverett*, for appellees.