**SECOND DIVISION**
**ANDREWS, P. J.,**
**MILLER and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be**
**_physically received_ in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 23, 2015**

# In the Court of Appeals of Georgia

A15A0227. HORNE v. THE STATE.

MILLER, Judge.

Following a jury trial, Damion Horne was convicted of aggravated battery (OCGA § 16-5-24 (a)), aggravated assault (OCGA § 16-5-21 (a) (2) (2008)), false imprisonment (OCGA § 16-5-41 (a)), and battery (OCGA § 16-5-23.1 (a)).[1] Horne appeals from the denial of his motion for new trial, contending that he received ineffective assistance of counsel. For the reasons that follow, we affirm.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence. We do not weigh the evidence or judge the credibility of the witnesses, but determine only

---

[1] Horne was also charged with rape (OCGA § 16-6-1 (a) (1)), two counts of aggravated sodomy (OCGA § 16-6-2 (a) (1)), and another count of aggravated assault. The trial court declared a mistrial as to these counts when the jury could not reach a verdict, and the State subsequently nolle prossed them.

> whether the evidence authorized the jury to find the defendant guilty of the crimes beyond a reasonable doubt in accordance with the standard set forth in *Jackson v. Virginia,* 443 U. S. 307 [99 SCt 2781, 61 LEd2d 560] (1979).

(Citation omitted.) *Wilson v. State,* 318 Ga. App. 37 (733 SE2d 345) (2012).

So viewed, the evidence shows that the victim and Horne were in a long-term relationship and shared a residence. On August 11, 2008, prior to the incident at issue, the victim called 911 and reported that Horne had physically assaulted her after he saw text messages on her phone concerning a sexual relationship with another man. The responding officer observed that the left side of the victim's face was very swollen and she was very upset. Horne, who had left the residence before police arrived, was not arrested.

On August 18, 2008, the day at issue, the victim called 911 and reported that Horne came to the house, beat her, raped her, stabbed her with scissors, and would not let her leave the house. When police officers responded to the scene, they caught Horne as he was attempting to flee. A police officer made contact with the victim and observed that she was crying, her face was swollen and bruised, one eye was swollen and bloodshot, and she had wounds on her legs.

2

The victim was transported to the hospital. At the hospital, and during a police interview that was recorded and played for the jury, the victim reported that, on the day in question, Horne accused her of seeing another guy, began hitting her when she denied it, and then grabbed her by her hair and dragged her upstairs, where he threw her onto the bed and resumed hitting her while threatening to kill her.

A few months before the trial, the victim married Horne. At Horne's trial, the victim recanted her allegations of abuse. In particular, the victim testified that she lied about the August 11 and August 18 incidents; most of her injuries were the result of consensual rough sex with Horne, while other injuries were self-inflicted; and Horne did not become physically violent with her, never threatened to kill her, and never hit her on the head. The victim testified that she lied about Horne hurting her and threatening to kill her because she hoped to get Horne into trouble for wanting to leave her.

After the victim recanted, the State called an expert in the field of intimate partner violence. The expert testified about the behaviors of victims of such violence, including that some of these victims minimize the acts of violence because they want to stay with the abuser, they often return to their abuser after an incident of violence, victims often change their mind about participating in the prosecution of such

3

offenses and victims sometimes recant their claims of abuse once they realize the ramifications of filing a police report.

1. In three related enumerations of error, Horne contends that trial counsel was ineffective in handling the testimony of the State's expert witness. Horne has failed to establish that trial counsel was ineffective.

> To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. [See] *Strickland v. Washington*, 466 U. S. 668, 687 [104 SCt 2052, 80 LEd2d 674] (1984). If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong. In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts. Furthermore, there is a strong presumption that the performance of counsel was within the wide range of reasonable professional lawyering, and we cannot reach a contrary conclusion unless defendant successfully rebuts the presumption by clear and convincing evidence. Judicial scrutiny of counsel's performance must be highly deferential.

(Citations and punctuation omitted.) *Bridges v. State*, 286 Ga. 535, 537 (1) (690 SE2d 136) (2010).

(a) At trial, trial counsel filed a motion in limine to exclude the expert's testimony regarding the behaviors of victims of intimate partner violence because the

4

expert's testimony was not admissible and there was no evidence the victim was in a cycle of abuse. While Horne argues that trial counsel could have supported the motion in limine with better authority and with a better understanding of the factual circumstances involved in this case, trial counsel's decision on how to argue the motion is considered strategic and rarely constitutes reversible error. See *Pitts v. State*, 272 Ga. App. 182, 188-189 (4) (a) (612 SE2d 1) (2005).

In any case, Horne cannot establish that the motion in limine would likely have been granted because the expert's testimony was clearly relevant to explain why a victim of intimate partner violence might recant in order to protect the abuser from prosecution. See *Parrish v. State*, 237 Ga. App. 274, 277 (2) (i) (514 SE2d 458) (1999) (where victim's credibility is at issue, expert testimony regarding abusive relationships is relevant to explain the victim's behavior); see also *Housing Auth. of the City of Macon v. Younis*, 279 Ga. App. 599 (631 SE2d 802) (2006) ("A motion in limine should [only] be granted when there is no circumstance under which the evidence under scrutiny is likely to be admissible at trial.") (citation omitted). Indeed,

> [t]he battered person syndrome is a complex area of human response and behavior. Therefore, expert testimony *must* be admitted because it supplies an interpretation of the facts which differs from the ordinary lay perception.

5

(Citations and punctuation omitted; emphasis supplied.) *Watson v. State*, 278 Ga. 763, 771-772 (11) (604 SE2d 804) (2004). Since the expert's testimony was admissible, Horne cannot show that trial counsel rendered ineffective assistance in his handling of the motion in limine.

(b) Horne next argues that trial counsel was ineffective for failing to effectively challenge the expert witness's testimony, because there was evidence that contradicted or did not support the three-phase "battering cycle" that develops in abusive relationships.[2]

> Decisions regarding
>
> how to deal with the presentation of an expert witness by the opposing side, including whether to present counter expert testimony, to rely upon cross-examination, to forego cross-examination and/or to forego development of certain expert opinion, is a matter of trial strategy which, if reasonable, cannot be the basis for a successful ineffective assistance of counsel claim.

---

[2] "The 'battering cycle' consists of three phases: the 'tension-building' stage in which minor abusive episodes occur and the [victim] attempts to be as placating and passive as possible to avoid more serious violence; the 'acute battering' stage in which explosive violence occurs; and the 'contrition' stage in which the batterer asks for forgiveness and makes promises, such as to seek help and to refrain from further violence." (Citation omitted.) *Johnson v. State*, 266 Ga. 624, 626 (2), n.4 (469 SE2d 152) (1996).

(Citation and punctuation omitted.) *Brown v. State*, 292 Ga. 454, 456-457 (2) (738 SE2d 591) (2013).

Here, trial counsel testified at the new trial hearing that the expert witness testified about basic principles that were widely accepted and that no expert in the field would refute. Trial counsel further testified that he did not seek an additional expert on the issue of battered person syndrome because the defense's theory was that many of the victim's injuries resulted from consensual rough sex and that she fabricated some of the allegations of abuse in order to retaliate against Horne for wanting to leave her. In light of these circumstances, Horne cannot overcome the strong presumption that trial counsel's decisions regarding how to deal with the State's expert fell within the range of sound trial strategy and reasonable professional judgment.

Moreover, Horne cannot establish prejudice from trial counsel's failure to present evidence showing that the victim's behaviors did not comport with battered person syndrome. The expert witness did not evaluate the victim, opine that the victim suffered from this syndrome, or specify that the victim recanted in this case because she was a battered person. While Horne argues that trial counsel should have challenged the expert's testimony that false reporting occurs less than one percent of

the time, the expert did not opine on the veracity of the victim's report to police in this case.

The jury is the arbiter of credibility, and it was able to assess all of the evidence and determine whether the victim's recantation was credible. See *Lowery v. State*, 264 Ga. App. 655, 657 (3) (592 SE2d 102) (2003) (it is for the jury to determine the credibility of witnesses, and the jury may reject a witness's explanation where it is inconsistent with or does not explain other evidence). The jury was entitled to reject the victim's trial testimony and rely upon her prior statements, which constituted substantive evidence. See *Meeks v. State*, 281 Ga. App. 334, 336 (636 SE2d 77) (2006) ("[E]ven though a witness may recant on the stand, her prior inconsistent statements constitute substantive evidence on which the factfinder may rely.") (citation and punctuation omitted). Given the victim's prior statements to police and hospital staff that Horne assaulted her, along with those witnesses' observations corroborating the same, there is no reasonable likelihood that the outcome of the trial would have been different had trial counsel more thoroughly challenged the State's expert to show that the victim did not suffer from battered person syndrome. Therefore, Horne has failed to establish that trial counsel was ineffective on this ground.

2. Horne next contends that trial counsel was ineffective for using the defense of consent for the charges of aggravated assault, aggravated battery, and battery. We discern no error.

"Trial tactics and strategy, however mistaken they may appear with hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them." (Citation and footnote omitted.) *Terrell v. State*, 276 Ga. App. 102, 104 (2) (622 SE2d 434) (2005).

Regardless of whether consent is a valid defense to aggravated assault, aggravated battery, or battery, Horne has failed to establish that trial counsel was ineffective. Horne was charged with rape, two counts of aggravated assault, aggravated battery, two counts of aggravated sodomy, false imprisonment, and battery. Trial counsel testified that the general defense strategy was that the victim consented to sex; many of the victim's injuries were the result of consensual rough sex; the injury to the victim's eye was self-inflicted during the August 11th argument; and the victim fabricated other allegations of abuse in order to retaliate against Horne. Horne concedes that the defense was reasonable as to some of his charged offenses,

in particular the rape and aggravated sodomy counts that were nolle prossed after the jury could not reach a verdict.

Given the favorable outcome as to nolle prossed offenses, we cannot say that trial counsel's decision to consistently employ the consent defense, whether "wise or unwise," was a patently unreasonable trial strategy. Cf. *Lambert v. State*, 287 Ga. 774, 776 (2) ( 700 SE2d 354) (2010) (despite presenting legally invalid coercion defense to murder charge, trial counsel was not ineffective where trial counsel was constrained by defendant's admission that he committed fatal beating).

3. Horne also contends that trial counsel was ineffective for failing to object to the improper argument of the prosecuting attorney. Specifically, Horne argues that the following portion of the State's argument was improper:

> We seek justice. We seek justice, and we're not trying to punish innocent people.

We agree with Horne that the prosecutor's statement was improper. See *Powell v. State*, 291 Ga. 743, 745-746 (2) (733 SE2d 294) (2012) (forbidding arguments providing or implying that the government only prosecutes guilty people). However, "it is important to view those remarks not in isolation, but in their proper context." (Citation omitted.) Id. at 746-747 (2) (b).

10

Here, before the prosecutor made the improper comment, trial counsel challenged the prosecution and investigation of the case by arguing that the State was convinced of Horne's guilt as soon as it arrested him because it did not corroborate the victim's outcry and ignored evidence undermining her claims. Specifically, trial counsel argued that the State conducted little, if any investigation, after Horne was arrested, ignored the lack of evidence of sexual assault, only briefly interviewed the victim following her release from the hospital, and failed to contact the police officer who responded to the August 11 911 call or interview individuals who witnessed the incident, which would have revealed that the victim was not credible. When the prosecutor made her closing argument, the prosecutor pointed out that several impartial witnesses, including police officers and hospital staff, who made contact with the victim following the August 18 incident testified at the trial. The prosecutor then stated

> [all of these witnesses] would have to be in a conspiracy to get Horne. And we don't know him. The State, I promise you, was . . . minding their own business when the victim called the police, twice. Not once, but twice. She called on him and said, help me; He's trying to kill me. We didn't even know who he was before she called.
>
> . . .

But why would the State get into a conspiracy to get him? Why would these witnesses get into [a] conspiracy to get him? We seek justice. We seek justice, and we're not trying to punish innocent people.

Soon after these remarks, the prosecutor conceded that Horne was presumed innocent, and asked the jury to find him guilty based on the trial evidence.

Given the context of the prosecutor's statements,

[w]e conclude that . . . the improper remarks of the prosecuting attorney did not undermine the fundamental fairness of the trial, and any potential harm was mitigated by the jury's understanding that the prosecutor was countering defense counsel's attack on the prosecution's integrity. . . . Moreover, at the close of the case, the trial court specifically instructed the jury that neither the indictment nor closing arguments should be considered as evidence.

(Citations and punctuation omitted.) *Powell*, supra, 291 Ga. at 749 (2) (b). Under these circumstances, Horne has failed to establish a reasonable likelihood that, absent the failure of his lawyer to object to the prosecutor's improper remarks, the outcome of the trial would have been different. Id.

4. Horne contends that trial counsel was ineffective for failing to file a special demurrer to the aggravated battery count, which allowed the jury to convict him of fracturing the victim's cheekbone based on the uncharged altercation on August 11, 2008, rather than the charged assault of August 18. We disagree.

12

Since "a defendant can be re-indicted after the grant of a special demurrer, a failure to file such a demurrer generally will not support a finding of ineffective assistance of counsel." (Citations and punctuation omitted.) *Lewis v. State*, 304 Ga. App. 831, 837 (5) (698 SE2d 365) (2010). "To succeed on his ineffective assistance claim, [Horne] was required to show that his trial counsel's failure to specially demur materially impacted his ability to present a defense, thereby creating a reasonable probability that counsel's deficiency changed the outcome of the case." (Citation and punctuation omitted.) Id.

Here, the aggravated battery count charged that, on August 18, 2008, Horne "did maliciously cause bodily harm to [the victim] by seriously disfiguring her face; said accused having accomplished said act by striking said [victim] about the face causing a fracture to her cheek bone, forehead to swell and eye to blacken." Horne has not shown that trial counsel's failure to demur materially impacted his ability to present a defense since, although he argued that the date of the injury was unclear, his defense at trial was that the victim's injury was accidentally self-inflicted. Accordingly, trial counsel's failure to demur affords no basis for reversal. See *Lewis*, supra, 304 Ga. App. at 837-838 (5).

13

5. Horne contends that trial counsel was also ineffective for failing to request jury charges on lesser included offenses.

(a) Horne first argues that trial counsel should have requested a jury charge on simple battery as a lesser included offense of aggravated assault. We disagree.

Here, the indictment charged that Horne committed the aggravated assault by repeatedly striking the victim with a paddle, a "means likely to cause serious bodily injury when used offensively against the person." Former OCGA § 16-5-21 (a) (2) provides that a person commits the offense of aggravated assault when that person assaults another person with any object which, when used offensively against a person, is likely to or actually does result in serious bodily injury. A person commits an assault by attempting to commit a violent injury to the person of another or by committing an act that places another in reasonable apprehension of immediately receiving a violent injury. OCGA § 16-5-20 (a).

Contrary to Horne's argument, former OCGA § 16-5-21 (a) (2) does not require that the State prove actual injuries. See *Gutierrez v. State*, 235 Ga. App. 878, 882 (3) (510 SE2d 570) (1998) (aggravated assault conviction does not require actual injury, as the State may establish commission of offense by showing that serious bodily injury is likely to result from the assault). Additionally, while Horne suggests that he

14

only struck the victim once, the victim confirmed that Horne struck her with a paddle on the back and on the legs, suggesting that the Horne struck her more than once. Under these circumstances, the failure to request a jury instruction on a lesser included offense of battery cannot support a claim of ineffective assistance because the evidence does not reasonably raise the issue that Horne may be guilty *only* of battery. See, e.g., *Ellis v. State*, 316 Ga. App. 352, 365 (7) (d) (729 SE2d 492) (2012).

(b) Horne argues that trial counsel also should have requested a jury charge on battery as a lesser included offense of aggravated battery. Horne was charged with aggravated battery for maliciously causing bodily harm to the victim by seriously disfiguring her face by striking the victim and causing a fracture to her cheek bone. At trial, Horne asserted that the victim's injury was self-inflicted when, on August 11, 2008, one week prior to the incident at issue in this case, she swung a bottle at Horne, he blocked her swing, and the bottle ricocheted and hit her in the face. Since Horne's defense was that he did not fracture the victim's cheekbone, we cannot say that trial counsel's failure to request a jury charge on battery was patently unreasonable. See *Leonard v. State*, 279 Ga. App. 192, 195 (2) (b) (630 SE2d 804) (2006) (failure to request lesser included offense of battery in connection with aggravated assault charge based on an all or nothing defense was not patently unreasonable).

15

6. In his last enumeration of error, Horne contends that trial counsel was ineffective for failing to request a limiting instruction on the statute of limitation for the aggravated battery count, because this instruction conflicted with the trial court's jury charge on prior difficulties. We disagree.

During the victim's testimony about the August 11 incident, the trial court instructed the jury that it was to consider this evidence only for the purpose of determining the state of feelings between Horne and the victim, and for no other purpose. At the conclusion of the trial, the trial court instructed the jury that the State was permitted to prove the commission of an offense on any date within the statute of limitations, so long as the indictment did not specifically allege that the date of the offense was material.

Horne speculates that these two instructions conflicted and this conflict created a strong possibility that the jury convicted him of aggravated battery based on injuries the victim suffered during the August 11 incident. In considering a claim that the defendant was convicted in a manner not alleged in the indictment, however, we focus on the record evidence and do not engage in conjecture or speculation. *McCrickard v. State*, 249 Ga. App. 715, 717-718 (1) (c) (549 SE2d 505) (2001).

16

Here, the trial court charged the jury on the specific allegations of the indictment. The court charged the jury that the State must prove the allegations of the indictment. The evidence established the allegations of the indictment. Other than the fact that prior difficulties evidence exists in the record, there is nothing to indicate the jury either was confused or ignored the trial court's instructions and actually used such prior difficulties evidence to convict in a manner not alleged in the indictment.

(Punctuation omitted.) *McCrickard* , supra, 249 Ga. App. at 718 (1) (c).

Even assuming that the victim broke her cheekbone on August 11th, as suggested by Horne, the cheekbone fracture was not a material element of the offense, and there is evidence of other serious disfigurement to support the aggravated battery conviction. Notably, the detective testified that he observed that the victim had puncture wounds on her head, her eye was red and bruised, and she had knots all over her forehead, and it was for the jury to decide whether the disfigurement was serious. See *Feagin v. State*, 317 Ga. App. 543, 545 (1) (731 SE2d 778) (2012); see also *Ganas v. State*, 245 Ga. App. 645, 646 (1) (a) (537 SE2d 758) (2000) (severe bruising may constitute serious disfigurement). Under these circumstances, Horne's claim that trial counsel was ineffective for failing to request a limiting instruction fails.

*Judgment affirmed. Andrews, P. J., and Branch, J., concur.*

17