**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 8, 2015**

# In the Court of Appeals of Georgia

A15A1364. AGYEMANG v. THE STATE.

RAY, Judge.

A Forsyth County jury convicted Edward Agyemang of one count of simple battery.[1] He appeals from that conviction, arguing that the trial court erred in denying his motion to introduce prior difficulties between the parties and that there was a fatal variance between the accusation and the evidence presented at trial. He also argues that the evidence was insufficient to support his conviction. For the following

---

[1] Agyemang was indicted for family violence battery, simple battery, simple family violence battery, disorderly conduct, and two counts of cruelty to children in the third degree. After the close of the State's evidence at trial, the trial court directed a verdict of acquittal as to one count of family violence simple battery and as to one count of disorderly conduct. The jury acquitted Agyemang of the remaining counts of family violence battery, disorderly conduct and cruelty to children in the third degree.

reasons, we vacate Agyemang's conviction and remand the case to the trial court for a new trial.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the [defendant] is no longer entitled to the presumption of innocence." (Citation omitted.) *Newsome v. State*, 324 Ga. App. 665, 665 (751 SE2d 474) (2013). In determining the sufficiency of the evidence, we neither weigh the evidence nor assess the credibility of the witnesses, but determine only whether the evidence authorized the jury to find the appellant guilty of the crime charged beyond a reasonable doubt. *Byrd v. State*, 325 Ga. App. 24, 24 (752 SE2d 84) (2013).

The facts show that Agyemang and his wife, Vera Adu-Asah, were working together to bathe their ten-year old special needs daughter when Agyemang became tired of holding the child aloft so the mother could clean her, and he dropped the child in the tub. Adu-Asah testified that she "had to hit him" to express her frustration at his act of dropping the child. Adu-Asah testified such hitting was "normal" for their relationship. However, Adu-Asah testified that Agyemang then retaliated by hitting her repeatedly all over her body while their child remained in the bathtub. Adu-Asah then called the police, and Agyemang left the house prior to their arrival.

Officer Sullivan with the Cumming Police Department responded to the call. Officer Sullivan testified that she observed a mark on Adu-Asah's left arm that looked like a "raised reddish welt" in the shape of a hand print and that Agyemang had left the house before she arrived at the scene.

Agyemang testified that, on the evening of the incident, he assisted his daughter in using the bathroom and then helped his wife bathe her. Because the child had "zero motor skills," Agyemang had to bend down and support the child's full weight while Adu-Asah washed her. After the child was bathed, she soiled herself and required additional cleaning. As Adu-Asah cleaned the child, Agyemang again had to bend down to support the child's weight. He told his wife that his "back is almost breaking" and that the child was slipping, and he asked her three times to allow him to set the child down; she said no. Agyemang testified that he then "got to the point I was so tired and the choice was between . . . me breaking . . . . I was almost passing out. And I sat her down because if I did not set her down, it would have been fatal if she somehow slipped out of my hand." He testified that as soon as he sat the child down, Adu-Asah "started throwing punches" in his face and hit him with a pail. Agyemang explained that he threw his hands up to defend himself and "without even knowing, [he] just threw [his] hands at her." Agyemang testified that he did not

3

intend to hit his wife, but that he swung his arm out in an effort to stop her blows. His wife continued to hit him while he attempted to re-position their child on the bathing chair. He then left the house.

The jury convicted Agyemang on one count of simple battery and acquitted him on every other count.

1. Agyemang argues that the evidence was insufficient to convict him of battery because the State failed to disprove his justification defense beyond a reasonable doubt. Once Agyemang raised the affirmative defense of justification and testified to the same, the State then bore the burden of disproving that defense beyond a reasonable doubt. *Joachim v. State*, 263 Ga. 816, 816 (1) (440 SE2d 15) (1994). Here, both Agyemang and Adu-Asah testified that Adu-Asah struck first. Although Agyemang testified that he merely threw his arms out in an effort to avoid Adu-Asah's blows, Adu-Asah testified that Agyemang retaliated by hitting her several times. "The issue thus became one of credibility, which is for the jury to decide. The jury, by its verdict, indicated that it believed the evidence contrary to [Agyemang's] justification defense." (Citations omitted.) Id. at 817 (1). Our review of the evidence persuades us that it was sufficient to authorize a rational trier of fact to reject

4

Agyemang's theory of self-defense and to find that he was guilty of simple battery. Id.

2. Agyemang contends that the trial court erred in denying his motion to introduce prior difficulties between himself and Adu-Asah that would demonstrate that Adu-Asah had "a history of unprovoked violence" towards Agyemang. We agree.

Agyemang moved to admit evidence of prior difficulties between himself and Adu-Asah at trial. In support of his motion, Agyemang proffered testimony outside the presence of the jury that Adu-Asah had been violent towards him on previous occasions about a year prior: that, after a disagreement, she set the carpet of their home on fire and stabbed him in the hand when he tried to put out the fire; and that, after arguing, she had destroyed his phone by dropping it in water and had hidden his car keys so he could not leave the house. Agyemang described an additional incident where he and Adu-Asah were "discussing something[,]" and when he did not immediately respond to Adu-Asah's question, she "got up and then stabbed [him] on [his] thigh three times." After this proffer and argument by counsel, the trial court denied the motion, finding that "the prejudicial impact of [the] testimony far outweighs its relevance."

5

"A defendant's right to introduce evidence of prior acts by the victim against him is still contingent upon the defendant making out a prima facie case of justification." (Citation and punctuation omitted.) *Robinson v. State*, 275 Ga. 143, 144 (3) (561 SE2d 823) (2002). To make such a prima facie showing, Agyemang "must show that the victim was the aggressor, that the victim assaulted the defendant, and that the defendant was honestly seeking to defend himself." (Citation and punctuation omitted.) Id. "Such evidence is admissible to show the victim's character for violence or tendency to act in accordance with . . . her character as it relates to the defendant's claim of justification." (Punctuation and footnote omitted.) *Owens v. State*, 270 Ga. 199, 201 (2) (509 SE2d 905) (1998). Further, the evidence of such prior difficulties between the defendant and a victim "should not be admitted at all if there is no probative connection with the present case." (Citation and punctuation omitted.) *Maxwell v. State*, 262 Ga. 73, 75 (2) (b) (414 SE2d 470) (1992) (overruled on other grounds by *Wall v. State*, 269 Ga. 506, 508-509 (2) (500 SE2d 904) (1998)).

As evidence that he acted in self-defense, Agyemang relies on testimony of Adu-Asah that she struck him first and that her act of striking him had nothing to do with any act of aggression on the part of Agyemang. He also relies upon his own testimony that he struck her only in his attempt to defend himself from his wife's

6

blows. As Agyemang set forth a prima facie case of self-defense, the trial court was authorized to allow him to present evidence of his prior difficulties with Adu-Asah in order to support his justification claim. See *Stiles v. State*, 242 Ga. App. 484, 487 (2) (b) (529 SE2d 913) (2000). And, contrary to the State's assertion, the fact that he also argued that he did not intentionally strike his wife when attempting to protect himself did not render his prima facie case of self-defense invalid. See *Turner v. State*, 262 Ga. 359, 361 (2) (c) (418 SE2d 352) (1992) ("There is no hard and fast rule . . . that the law of accident and of self defense are always 'mutually exclusive'").

We find that the trial court's determination that the evidence was more prejudicial to Adu-Asah than probative was in error. Here, Adu-Asah testified at trial that she had hit Agyemang in the past after disagreements in their marriage and that she was the initial aggressor during the present incident. In light of such evidence, it would not be unfairly prejudicial to allow the jury to hear of specific acts of violence she committed towards her husband in the past. Further, the evidence of Adu-Asah's prior violent acts towards Agyemang was more probative than prejudicial. For a probative connection between the prior difficulties and the present case to exist, there must be "some link of association, something which draws together the preceding and subsequent acts, something which gives color of cause and effect to the transaction,

7

and sheds light upon the motive of the parties." (Citations and punctuation omitted.) *Maxwell*, supra. Here, the evidence sheds light on how Adu-Asah reacted to Agyemang during arguments in their marriage. Further, the evidence of prior difficulties was probative for its impeachment value. Adu-Asah testified that although she first hit Agyemang, that such hitting was not forceful. Agyemang testified otherwise, explaining that Adu-Asah was "throwing punches" at him and that she hit him with a pail. He was entitled to impeach her testimony with similar acts of violence she had exhibited towards him in the past.

In light of the conflicts in the testimony and the fact that the jury obviously believed portions of Agyemang's testimony when it acquitted him of all other counts, save for the single count of simple battery, we find that the trial court's exclusion of this evidence was not harmless as we cannot say that "it is highly probable that the error did not contribute to the judgment." (Citation omitted.) *Hall v. State*, 196 Ga. App. 523, 525 (2) (396 SE2d 271) (1990). Accordingly, we vacate Agyemang's conviction and remand the case for a new trial.

3. Agyemang finally argues that there was a fatal variance between the accusation and the evidence presented at trial. We disagree.

8

Under OCGA § 16-5-23 (a), "A person commits the offense of simple battery when he . . . either: (1) Intentionally makes physical contact of an insulting or provoking nature with the person of another; or (2) Intentionally causes physical harm to another." The accusation charged Agyemang with simple battery by "intentionally making contact of an insulting and provoking nature . . . by striking [Adu-Asah] on the left arm." Agyemang argues that there was no evidence presented at trial that he made contact with Adu-Asah in an "insulting or provoking manner[,]" and that he should have been charged for causing physical harm to her. However, OCGA § 16-5-23 (a) (1) "concerns intentional contact of an insulting or provoking nature, contemplating a touching which does not injure but which is insulting." *Lyman v. State*, 188 Ga. App. 790, 791 (2) (374 SE2d 563) (1988). Here, the evidence showed that Agyemang struck Adu-Asah on the left arm and that it left a welt. "Whether or not such contact was 'insulting and provoking' was a factual issue to be decided by the jury." (Citation omitted.) *Eberhart v. State*, 241 Ga. App. 164, 166 (2) (526 SE2d 361) (1999) (evidence was sufficient to support a conviction of simple battery under OCGA § 16-5-23 (a) (1) when defendant "repeatedly kicked, slapped, and grabbed his wife[,]" as well as "nudged" her with his foot and tried to "control" her by grabbing her arm to prevent her from leaving). Here, we cannot say that there was a

9

fatal variance. See *Curtis v. State*, 285 Ga. App. 298, 302 (2) (645 SE2d 705) (2007) ("A variance is not fatal if the accused is definitely informed as to the charges against him and is protected against another prosecution for the same offense") (citation and punctuation omitted).

*Judgment of conviction vacated and case remanded to the trial court. Barnes, P. J., concurs. McMillian, J., concurs in judgment only as to Division 2 and concurs fully otherwise.*

10