**FOURTH DIVISION**
**ELLINGTON, P.J.**
**MERCIER and PETERSON, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**April 5, 2016**

# In the Court of Appeals of Georgia

A16A0125. ROBINSON v. THE STATE.                          PE-042C

PETERSON, Judge.

Tony Robinson appeals his convictions for aggravated assault, criminal damage to property in the second degree, and cruelty to children in the third degree. He argues that (1) the guilty verdicts are against the weight of the evidence; (2) improper jury conduct should have resulted in a mistrial and shows that the verdict "is inherently lacking in due process"; and (3) the trial court erred in admitting evidence of his prior convictions. We find that the evidence was sufficient to authorize the guilty verdicts, Robinson waived his arguments as to juror misconduct, and the trial court did not abuse its discretion in admitting evidence of Robinson's prior convictions. Therefore, we affirm Robinson's convictions.

1. Robinson argues that the guilty verdicts were against the weight of the evidence, which we will construe as an argument that the evidence was insufficient to support his convictions. When appellate courts review the sufficiency of the evidence, they do not "re-weigh the evidence or resolve conflicts in witness testimony" but instead defer "to the jury's assessment of the weight and credibility of the evidence." *Greeson v. State*, 287 Ga. 764, 765 (700 SE2d 344) (2010) (citation omitted); *see also Allen v. State*, 296 Ga. 738, 741 (2) (770 SE2d 625) (2015) (whether to grant a new trial on grounds the verdict is against the weight of the evidence is matter solely for trial court's discretion; appellate courts may review only for sufficiency). We determine whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (99 S. Ct. 2781, 61 LE2d 560) (1979) (citation omitted) (emphasis in original).

So viewed, the evidence shows that Robinson was in a relationship with the victim and had been living in her apartment for several months. During the course of their relationship, Robinson was physically violent toward the victim. The victim called police in June 2013 following one particular violent incident. Prior to the trial

over that incident, Robinson asked the victim to testify that her injuries were self-inflicted, but the victim failed to appear in court rather than testify to that effect.

Subsequently, on October 5, 2013, Robinson and the victim argued over his use of a cell phone – for which the victim was paying – to have frequent phone conversations with his ex-girlfriend. Robinson followed the victim into her bedroom, stating, "I told you I was going to kill you." Robinson grabbed the victim by her arms as she tried to move across the bed, positioning himself on top of her. After he let her go, the victim announced that she was leaving the home, but Robinson grabbed her keys and cell phone. Eventually she persuaded him to allow her to leave by inviting him to go to Wal-Mart with her and her son.

Along with her son, the victim managed to get to the car in time to lock Robinson out of it. As the victim began to back out of her parking space, Robinson tried to open the car's doors, and then ran back to the apartment. The victim pulled back into her parking spot, and yelled out of the window, "I'm calling the police on you, you stupid bitch." Robinson picked up a concrete slab that was near the apartment door and approached the front of the victim's car. He swung it multiple times at the victim's car; it ultimately came through the window and injured the victim in the head, with a piece of concrete ending up in her lap. The victim's son

screamed in the back seat. The victim drove to a library, where she called police. The victim was hospitalized for five days due to her injuries, including a skull fracture and hearing loss. To completely repair the victim's car would have cost about $1,600.

An officer who responded to the 911 call found the victim sitting in her car at the library, her head bleeding profusely. A concrete slab was in between the victim's legs and her driver's side window was shattered. The officer later went to the apartment complex parking lot, where police found two other pieces of broken concrete, as well as broken car parts. A friend of the victim testified that Robinson called her and said, "I'll find [the victim] before they find me"; the friend testified over objection that she interpreted that as a "threat."

Robinson testified in his own defense at trial. He admitted throwing the concrete slab at the victim's car, but said the victim was trying to run him over at the time. He said he "ran for [his] life" and felt his life was in danger. The victim and her son both denied that the victim's car hit Robinson.

Robinson argues that the guilty verdicts were a product of the introduction of his prior criminal history and the testimony that Robinson had threatened the victim when he told her friend, "I'll find [the victim] before they find me." However, as explained in Division 3, his prior convictions were properly admitted. As for

4

Robinson's argument about the friend's testimony that he threatened the victim – which he does not support with any legal authority – our review of the evidence shows that any error in admitting that statement was harmless given the weight of the evidence against Robinson.

Robinson's position at trial was that his need to defend himself justified throwing a concrete slab at his girlfriend's car. "Once [Robinson] raised the affirmative defense of justification and testified to the same, the State then bore the burden of disproving that defense beyond a reasonable doubt." *Agyemang v. State*, 334 Ga. App. 137, 138-39 (1) (778 SE2d 387) (2015). Robinson argues on appeal that his testimony (and, to some extent, the testimony of the victim's minor child) contradicted the victim's testimony, showing that Robinson was acting in self-defense. But it is for the jury, not this Court, to assess the credibility of the witnesses and resolve conflicts in their testimony. *See Greeson,* 287 Ga. at 765. Robinson also complains that the responding officer testified that he could not say exactly how the victim's car was positioned when it lost its driver's side mirror. To the extent that Robinson suggests that the positioning of the victim's car showed that she was the aggressor during the incident in the parking lot, the victim refuted that suggestion

through her testimony, and "[t]he testimony of a single witness is generally sufficient to establish a fact[.]" OCGA § 24-14-8.

Robinson suggests that the victim's testimony itself showed that she was the aggressor. He points to her testimony that he was at the back of her car, trying to get in, when she "started trying to put the car in reverse." However, the victim went on to testify that Robinson ran back to her home before picking up a concrete slab and charging toward her car. She and her son also testified that her car did not hit Robinson. Robinson argues that the victim's admitted decision to return briefly to her parking spot and yell that she was calling the police showed that she did not fear Robinson causing her any harm. But even assuming this is true, fear on the victim's part is not a necessary element of the crimes of which Robinson was convicted. *See, e.g.,* OCGA § 16-5-20(a) ("A person commits the offense of simple assault when he or she either: (1) [a]ttempts to commit a violent injury to the person of another; *or* (2) [c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury.") (emphasis added); OCGA § 16-5-21(b)(2) ("A person commits the offense of aggravated assault when he or she assaults . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury[.]").

This case presented an issue of credibility, which was for a jury to decide. The jury, by its verdict, indicated that it credited the evidence contrary to Robinson's justification defense. *See Agyemang*, 334 Ga. App. at 139. Our review of the evidence persuades us that it was sufficient to reject Robinson's theory of self-defense.

2. Robinson argues that he was prejudiced by improper jury conduct that should have resulted in a mistrial and shows the verdict is "lacking in due process." His argument is based on two incidents, the first while the State was still presenting its case and the second during deliberations.

Where a defendant fails to move for a mistrial, he waives any appellate argument that the trial court erred by not granting one. *See Little v. State*, 332 Ga. App. 553, 555 (2) (774 SE2d 132) (2015). An argument that a juror should have been removed from a jury also is waived when counsel fails to request a juror be struck for cause. *See Ware v. State*, 321 Ga. App. 640, 642 (2) (742 SE2d 156) (2013). In this case, defense counsel indicated he had no objection to the trial court's decisions, in one instance, to discharge a juror and utilize an alternate and, in the other instance, to allow the juror in question to continue deliberations with the panel. By consenting to the trial court's handling of these juror issues, Robinson has waived any argument

that the trial court erred in that respect, including by leaving a juror on the panel or failing to grant a mistrial.[1]

3. Finally, Robinson argues that the trial court erred by admitting evidence of his previous convictions. Robinson was paroled in 2006 on convictions for armed robbery and voluntary manslaughter.[2] He was convicted of aggravated stalking and terroristic threats in 2012. The trial court admitted evidence of the guilty convictions for general impeachment purposes, over a defense objection. We conclude the trial court did not abuse its discretion.

Subject to the time limits of OCGA § 24-6-609(b), OCGA § 24-6-609(a)(1) provides that evidence that an accused who testifies has been convicted of a crime punishable by death or imprisonment in excess of one year "shall be admitted if the

---

[1] Robinson also appears to complain about the trial court's failure to give a charge under *Allen v. United States*, 164 U.S. 492 (17 S. Ct. 154, 41 LEd 528) (1896), after the jury indicated that it was "hung." This argument is not included within any of his enumerations of error, and so we do not address it. *See Brown v. State*, 315 Ga. App. 115, 119 n.18 (2) (c) (726 SE2d 612) (2012).

[2] Although the trial transcript and the parties' briefs indicate these convictions were entered in 1986, court filings from the related proceedings indicate the convictions were entered in 1987. The apparent discrepancy does not change our analysis.

court determines that the probative value of admitting the evidence outweighs its prejudicial effect to the accused."[3]

> The introduction of evidence of a prior felony conviction is intended to afford the jury a basis to infer that the witness's character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony. The introduction of evidence of a prior crime is thus a general attack on the credibility of the witness.

*Smith v. State*, 331 Ga. App. 296, 299 (2) (771 SE2d 8) (2015)(citation and internal punctuation omitted). A trial court's decision to admit a defendant's prior conviction under OCGA § 24-6-609(a)(1) is reviewed for an abuse of discretion. *Id.* at 300 (2).

OCGA § 24-6-609(b) provides that a conviction shall not be admissible if more than ten years have passed since the conviction or the release of the witness from confinement, whichever is later, "unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." Robinson was not paroled on the armed robbery and voluntary manslaughter convictions until 2006, less than ten years before the 2014 trial. Accordingly, the more stringent "substantially

---

[3] Because the trial of this case took place in 2014, Georgia's new Evidence Code applies. *See* Ga. L. 2011, pp. 99, 214, § 101.

9

outweighs" standard does not apply even as to those convictions. *See United States v. $21,175.00 in U.S. Funds*, 521 Fed. Appx. 734, 741 (11th 2013)[4]; *Smith*, 331 Ga. App. at 299 n.9 (2). This approach differs from the prior OCGA § 24-9-84.1(a), under which, except for convictions involving dishonesty or false statements, even recent felony convictions could be used to impeach a defendant only if the probative value "substantially outweigh[ed]" the prejudicial effect.

Under the prior code section, Georgia trial courts undertaking that balancing were to consider factors such as (1) the kind of felony involved and its impeachment value, (2) the time of the conviction and the defendant's subsequent history, (3) the similarity between the past crime and the charged crime (lest evidence of a similar crime create an unacceptable risk of prejudice); (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue. *See Waye v. State*, 326 Ga. App. 202, 205-06 (3) (756 SE2d 287) (2014); *see also Quiroz v. State*, 291 Ga. App. 423, 428 (4) (662 SE2d 235) (2008). This court has raised questions about the continued applicability of these factors to the new Evidence Code's provision for

---

[4] Given the new Evidence Code's similarity with the federal rules, Georgia courts look to federal case law in interpreting it, with any conflicts among the circuits to be resolved by following the U.S. Court of Appeals for the Eleventh Circuit. *See State v. Jones*, 297 Ga. 156, 158 (1) (773 SE2d 170) (2015).

instances when not more than ten years have passed since the conviction or the release of the witness from confinement. *See Smith*, 331 Ga. App. at 300 (2). However, the federal courts have employed these factors under a prior version of the federal evidence rule that is substantively similar to our new evidentiary rule. *See United States v. Preston*, 608 F.2d 626, 639 n.17 (5th Cir. 1979). They remain a useful guide.

The trial court considered those factors here. The trial court correctly noted the centrality of the credibility dispute between Robinson and the victim. The trial court pointed out that the defendant had received multiple convictions after his 2006 parole, including one in 2007. The trial court acknowledged that the prior convictions did not involve crimes of dishonesty, saying that "cuts against the State a little bit," but rightly pointed out that, as the statute is structured, crimes of dishonesty are considered under a different standard. The trial court considered the similarity between the prior convictions and the pending charges against Robinson, including that on their face the 2012 convictions sounded as though they involved "some sort of domestic situation," deciding that was not enough of a similarity to prevent their use for impeachment purposes Even under the prior, more stringent standard, this Court has found that it is not an abuse of discretion to allow a defendant charged with

11

violent crimes to be impeached with convictions for violent offenses. *See Jones v. State*, 318 Ga. App. 105, 107-08 (3) (733 SE2d 407) (2012) (no abuse of discretion in admitting prior aggravated assault conviction at trial for murder and aggravated assault – charges on which defendant was acquitted – and firearms offenses); *Newsome v. State*, 289 Ga. App. 590, 592-94 (2) (657 SE2d 540) (2008) (no abuse of discretion to admit prior convictions for aggravated assault and possession of a firearm during the commission of a felony at trial for aggravated assault, aggravated stalking, cruelty to a child, and possession of a firearm during the commission of a felony). We find no abuse of discretion in the trial court's thoughtful and considered analysis.

Robinson also argues that the prior convictions were improperly admitted because the State was allowed to offer certified copies of them into evidence even after he acknowledged them on the stand. He relies on *Ross v. State*, 279 Ga. 365, 366-68 (2) (614 SE2d 31) (2005), in which our Supreme Court held that it was error to reject a defendant's offer to stipulate to his status as a convicted felon when the State's purpose for admitting the defendant's prior conviction into evidence was to satisfy the elements of the charge of possession of a weapon by a convicted felon. The high court therein set forth the following limited exception to the general rule

that a defendant cannot stipulate to facts and thereby obviate the need for proof over the State's objection:

> [W]hen (1) a defendant's prior conviction is of the nature likely to inflame the passions of the jury and raise the risk of a conviction based on improper considerations, and (2) the purpose of the evidence is solely to prove the defendant's status as a convicted felon, then it is an abuse of discretion for the trial court to spurn the defendant's offer to stipulate to his prior conviction and admit the evidence to the jury.

*Id.* at 368 (2). However, Robinson's attempt to apply the *Ross* exception here is foreclosed by our decision in *Jones,* which explained that the *Ross* exception did not apply to evidence used for the proper purpose of impeaching a defendant's credibility as a witness. *Jones*, 318 Ga. App. at 108 (4). Therefore, we discern no error in the trial court's admission of the prior convictions.

*Judgment affirmed. Ellington, P. J., and Mercier, J., concur.*