**THIRD DIVISION
DILLARD, P. J.,
GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**October 18, 2019**

# In the Court of Appeals of Georgia

A19A1014. JONES v. THE STATE.

DILLARD, Presiding Judge.

Ronnie Jones appeals his convictions for rape and aggravated battery, arguing that the trial court (1) improperly expressed an opinion on his guilt in violation of OCGA § 17-8-57; (2) erred in refusing to give a jury instruction on battery as a lesser-included offense of aggravated battery; and (3) abused its discretion by allowing the State to introduce extrinsic evidence of a prior aggravated-assault conviction. For the reasons set forth *infra*, we reverse Jones's convictions and remand the case for further proceedings consistent with this opinion.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that Jones and the victim, C. W., met in 2009, and were married in 2012. Jones was

---

[1] *See, e.g.*, *Morris v. State*, 340 Ga. App. 295, 295 (797 SE2d 207) (2017).

physically and verbally abusive to C. W. during their marriage and isolated her from family and friends. And as a result of this abusive behavior, C. W. attempted to leave Jones several times; but each time, they got back together because he was aggressive and she was afraid of him. But eventually, C. W. left Jones for good and moved to North Augusta. One night after her move, when she was relaxing at home, Jones went to her house, kicked in the door, "charged [her] like a quarterback[,]" and threatened to break her jaw if she called the police. In February 2014, after this incident, C. W. finally filed for divorce.

Several months later, on August 21, 2014, Jones called C. W. and told her that he would agree to a divorce on the condition that she give him a ride to his car—which was at her mother's house—and talk to him about their relationship. C. W. agreed, but after she picked Jones up, he instigated a fight over her car (which she had recently purchased), alleging that another man bought it for her. Jones—who was driving the car—became increasingly angry, and at some point, he took his hands off the wheel, grabbed C. W.'s neck, choked her, and threatened to flip the car and kill them both. But he eventually calmed down, and after stopping briefly at a convenience store, Jones drove C. W. to her mother's house as planned. Thereafter, Jones took C. W. to "the Riverwalk," apologized for attacking her in the car, and told

2

her that he wanted to discuss working on their marriage. When C. W. told him that she did not want to talk about that, they returned to her mother's house, and Jones left.

Later that evening, around 11:00 p.m., Jones returned to C. W.'s mother's house and told her to get into the car with him. Although C. W. did not want to go with Jones, she agreed to do so. Then, after making a few stops, Jones took C. W. to his family's auto shop, where he had been living. Once there, Jones asked C. W. if she would have sex with him one last time before the divorce. C. W. agreed, and they had consensual sex on a mattress that had been placed on the floor of the shop. Afterward, outside of the shop, Jones asked C. W. if she was still sure about wanting a divorce; and when she said yes, Jones told her that "it's best that [she] leave before [he] hurt [her]." Jones then went back into his shop, but when C. W. started her car, he ran back outside, "jumped through the [car] window[,]" pushed his elbow into her throat, took her keys, and went back inside.

C. W.—who did not have her phone or keys—went back into the shop, called out Jones's name, and then she heard the door slam behind her. C. W. immediately looked to her left and saw that Jones was holding a can of gasoline and a lighter. Jones threatened C. W., saying: "Bitch, I'm going to kill you. I'm going to teach you

about playing with me." Jones then started pouring gasoline on C. W., while she begged him to stop and tried to escape. After dropping the gasoline can and lighter, Jones grabbed C. W.'s neck "extremely hard" with his right hand and threw her on the mattress. Jones gripped her neck so hard that she lost consciousness, and when she awoke, he lit her on fire and "everything went up in flames." Once the fire was put out (by both C. W. and Jones), C. W. begged Jones to take her to the hospital for treatment, but he told her that she "would be fine" and drove her to a pharmacy instead.

C. W. could not move due to her injuries, so she stayed in the car while Jones went into the pharmacy for a few minutes. But while he was inside, C. W. saw a couple nearby and asked them to call 911. Although the police had been called, C. W. still went back to the shop with Jones because she was afraid of him, and once there, Jones put Vaseline, gauze, and tape on her burns. Then, Jones had vaginal intercourse with C. W. against her will, while she was still in "so much pain" and begging him to get help for her injuries. After Jones ejaculated, she "balled over in a knot" on her side, and he "had sex with [her] from behind." Eventually, after several futile attempts to escape, Jones let C. W. leave for work, and she drove to her sister's house to get

4

help. As a result of the attack, C. W. suffered such severe injuries that she was hospitalized and remained in the Intensive Care Unit for two weeks.

Subsequently, Jones was charged, via indictment, with rape and aggravated battery. And following a jury trial,[2] Jones was convicted of both charged offenses. Jones filed a motion for a new trial, and after a hearing on the matter, the trial court denied the motion. This appeal follows.

1. Jones argues that the trial court erred by improperly expressing an opinion on his guilt in violation of OCGA § 17-8-57. We agree.

Under OCGA § 17-8-57 (a), "[i]t is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused." And should any judge express an opinion as to "*the guilt* of the accused, the Supreme Court or Court of Appeals or the trial court in a motion for a new trial *shall* grant a new trial."[3]

While Jones was represented by counsel for the majority of the trial, he asked to represent himself for the purpose of cross-examining C. W. Specifically, after the

_____

[2] As explained more fully *infra*, at trial, Jones was primarily represented by counsel, but during portions of the trial, including some of the cross-examination of C. W., he elected to represent himself.

[3] (Emphasis supplied).

5

State presented the testimony of C. W. and two other witnesses, Jones notified the court that he was not satisfied with his attorney, and he asked the court to appoint new counsel to represent him. The court responded that it would not appoint new counsel because Jones was represented by a skilled attorney; but the court asked if he wanted to represent himself. The court then questioned Jones at length to make sure that he understood what representing himself would entail, including that he would be bound by all of the rules of evidence lawyers must adhere to and that defendants who represent themselves usually have a negative outcome with the jury. Eventually, after a lengthy discussion on the matter, the trial court granted Jones's request to represent himself, but required his counsel to remain in the courtroom to assist him if necessary.

Jones then recalled C. W.—who had been previously examined by the State and his counsel—for additional cross-examination. Throughout Jones's cross-examination of C. W., he asked numerous improper questions, and the State objected each time that he did so. The court also interrupted Jones several times to explain why certain questions were impermissible. And after Jones asked C. W. a string of objectionable questions, the State argued that he was badgering her, noting that she had been on the witness stand for over two days and Jones was not asking her any

relevant questions. Immediately thereafter, the court had the following exchange with Jones:

The court:    Sir, I've told you you're bound by the same rules of evidence that lawyers are. You can't just say anything you want to. Move on to the next question.

Jones:        I just asked the question a bad way. I just want to get some truth of this, what happened that night.

The court:    Sir, *all of this is the truth*. Move to your next question.[4]

Jones then continued with his cross-examination of C. W.

On appeal, Jones argues that the trial court improperly expressed its opinion on his guilt when—during the victim's testimony—it stated "all of this is true." Both parties agree that Jones failed to object at the time when the court made this statement, but acknowledge that we still review Jones's claim for plain error under OCGA § 17-8-57 (b), which provides:

*Except as provided in subsection (c)* of this Code section, failure to make a timely objection to an alleged violation of paragraph (1) of subsection (a) of this Code section shall preclude appellate review, *unless such violation constitutes plain error* which affects substantive

---

[4] (Emphasis supplied).

7

rights of the parties. Plain error may be considered on appeal even when a timely objection informing the court of the specific objection was not made, so long as such error affects substantive rights of the parties.[5]

But regardless, under OCGA § 17-8-57 (c), "[s]hould any judge express an opinion as to the guilt of the accused, the Supreme Court or Court of Appeals or the trial court in a motion for a new trial *shall* grant a new trial."[6]

Here, during an exchange with Jones regarding his improper questioning of the victim, the trial court expressed an opinion as to his guilt. Specifically, during Jones's cross-examination of C. W., *the victim* and only eyewitness to the attack, the trial court stated that "all of this is the truth." The State contends that, taken in context,

---

[5] (Emphasis supplied). Under a prior version of OCGA § 17-8-57, a trial court's statements, intimating its opinion about what has or has not been proved, "required an automatic reversal and a new trial." *Quiller v. State*, 338 Ga. App. 206, 208 (789 SE2d 391) (2016). But under the newly revised Code section, in contrast, the trial court must "provide a curative instruction or declare a mistrial only where the error has been objected to, OCGA § 17-8-57 (a) (2); and the failure to object to the error at trial precludes appellate review unless such violation constituted plain error. OCGA § 17-8-57 (b)." *Id.* (citations omitted). While the new version of the statute did not become effective until July 1, 2015, *see* Ga. L. 2015, p. 1050 (2015), this Court has held that the current version of OCGA § 17-8-57 (b), which provides for plain-error review, applies retroactively. *See id.* at 209. But as explained more fully *infra*, unlike Sections (a) and (b) of OCGA § 17-8-57, Section (c) of the statute still requires automatic reversal and the grant of a new trial when, as in this case, the trial court expresses an opinion as to *the guilt* of the accused.

[6] (Emphasis supplied).

8

this statement was merely an attempt by the court to "control the conduct of the trial and guide [Jones][,] who was acting as his own attorney." This argument is a nonstarter. To the contrary, the damning testimony offered by C. W. against Jones right before the trial court's "all of this is truth" statement extensively detailed the violence inflicted on her by Jones during the incident at issue. Additionally, the plain language of OCGA § 17-8-57 (c)—which applies when a trial court expresses an opinion regarding a defendant's guilt—does not remotely suggest that the court's *subjective* intent in making the offending statement is relevant. Indeed, all that matters are the words *expressed* by the trial court. And this is perfectly reasonable because the purpose of this statutory section—as reflected by the relevant text—is to "keep *the jury* from being influenced by the judge's opinion."[7]

Nevertheless, the State also contends that Jones cannot show plain error because, *inter alia*, he has not demonstrated that the trial court's comments likely

---

[7] *Quiller*, 338 Ga. App. at 208; *see Davenport v. State*, 308 Ga. App. 140, 156-57 (3) (706 SE2d 757) (2011) ("[W]hile a judge may not express an opinion or intimate to the jury what has or has not (in his or her view) been proven it is well established that the purpose of this limitation is to prevent the jury from being influenced, not to keep the judge from making up his or her own mind."(punctuation an footnote omitted)).

9

affected the outcome of the trial.[8] But this contention is likewise without merit because, under OCGA § 17-8-57 (c), when a court expresses an opinion as to the defendant's guilt, he or she *shall* be granted a new trial.[9] We conclude, then, that the trial court's statement that all of the victim's testimony is "the truth" is equivalent to communicating its belief to the jury that Jones was guilty, even if that is not what it

[8] In *State v. Kelly*, 290 Ga. 29 (718 SE2d 232) (2011), our Supreme Court set forth the requirements for an appellant to show plain error:

> First, there must be an error or defect—some sort of deviation from a legal rule—that has not been intentionally relinquished or abandoned, *i.e.*, affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error—discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings. *Id.* at 33 (2) (a) (punctuation omitted).

But as explained *supra*, plain-error review does not apply under the circumstances of this case.

[9] *See* OCGA § 17-8-57 (c) ("Should any judge *express an opinion as to the guilt of the accused*, the Supreme Court or Court of Appeals or the trial court in a motion for a new trial *shall* grant a new trial." (emphasis supplied)).

10

intended. As a result, even though Jones failed to object to the offending statement at trial, we are statutorily required to reverse his convictions and grant him a new trial.[10]

2. In light of our holding in Division 1 *supra*, we need not address Jones's remaining claims of error. Nevertheless, because the issues he raises are likely to reoccur upon retrial, we find it prudent to resolve them now in the interests of judicial economy.[11]

---

[10] *See Anthony v. State*, 303 Ga. 399, 406 (4) n.12 (811 SE2d 399) (2018) ("Today, in the absence of a timely objection, a judicial comment—*other than a comment on the guilt of the accused*, *see* OCGA § 17-8-57 (c)—amounts to reversible error under the statute only to the extent that it is a plain error which affects substantive rights." (punctuation omitted) (emphasis supplied)); *Harris v. State*, 302 Ga. 832, 834 (2) n.2 (809 SE2d 723) (2018) ("Under the amended version of [OCGA § 17-8-57], which went into effect in July 2015, a failure to object allows review only for plain error (unless the trial judge expresses an opinion 'as to the guilt of the accused,' in which case *reversal is still automatic.*")). We have found no prior cases in which a trial court made a statement similar to the offending remark at issue in this case, but we do not hesitate in finding that the court's comment here essentially communicated its belief that Jones was guilty. *Cf. Hightower v. State*, 304 Ga. 755, 759 (2) (b) (822 SE2d 273) (2018) (holding that the court's comment that a doctor was "a frequent witness in Fulton Courts" indicated nothing about the defendant's guilt); *Pyatt v. State*, 298 Ga. 742, 746-748 (3) (784 SE2d 759) (2016) (holding that a trial judge's comment appearing to agree with the State that a witness's statement was "critical evidence" did not violate OCGA § 17-8-57).

[11] Because there was sufficient evidence to support Jones's convictions, he may be retried for those offenses. *See Raines v. State*, 304 Ga. 582, 589 (2) (b) (820 SE2d 679, 687 (2018) ("[T]he defendant may be retried if the evidence presented was

(a) Jones argues that the trial court erred by refusing to give a jury instruction on battery as a lesser-included offense of aggravated battery. We disagree.

Prior to trial, Jones requested certain jury charges in writing, including one on battery as a lesser-included offense of aggravated battery. Then, during the charge conference at the conclusion of trial, the trial court informed Jones that it would not give the requested jury charge, and Jones objected. In explaining its ruling, the court stated that Jones denied committing the crime altogether, and never argued that he was guilty of simple battery. Jones now argues that the trial court erred in this respect because the evidence supported a charge on battery.

We review the trial court's refusal to give a requested charge for an "abuse of discretion."[12] And in considering whether the court abused its discretion in failing to give a jury charge on battery as a lesser-included offense of aggravated battery, we begin by considering the text of OCGA § 16-5-23.1. (a) and OCGA § 16-5-24 (a). Under the former, a person commits the offense of battery when "he or she intentionally causes substantial physical harm or visible bodily harm to another";[13]

sufficient to support his conviction for the crimes charged.").

[12] *Salazar-Balderas v. State*, 343 Ga. App. 201, 203 (1) (806 SE2d 644) (2017).

[13] OCGA § 16-5-23.1. (a).

12

and under the latter, a person commits the offense of aggravated battery when "he or she maliciously causes bodily harm to another by depriving him or her of a member of his or her body, by rendering a member of his or her body useless, or by seriously disfiguring his or her body or a member thereof."[14] Importantly, these two battery statutes "categorize the types of battery by the severity of the harm inflicted and . . . provide harsher penalties for batteries that result in more severe bodily harm";[15] and here, Jones maintains that the evidence presented below supported a jury charge on battery.

Specifically, Jones argues that the evidence he grabbed C. W. by the neck, threw her to the floor, and set her on fire, which caused "visible burns and blisters," supported a jury instruction on battery because of his testimony that C. W. accidentally caused the fire, injuring them both. According to Jones, on the night in question, he and C. W. were at his shop, and they argued about Jones cheating on her with another woman. And during this argument, Jones was holding a lighter when he realized there were gas cans on the floor that needed to be moved out of the walkway. Jones claimed that—when he was moving the cans—C. W. jumped off of the bed,

---

[14] OCGA § 16-5-24 (a).

[15] *Williams v. State*, 248 Ga. App. 316, 318 (1) (546 SE2d 74) (2001).

approached him, and "hit his hands" while he was holding one of the gas cans and a lighter. Jones further testified that C. W.'s actions caused gasoline to pour out of the can and light *his* chest and hands on fire. Finally, according to Jones, he threw the gas can after his hands were on fire, and when he did so, C. W.—who was directly in front of him—also caught on fire. Essentially, Jones maintains that C. W.'s injuries were caused by an accident, which was her fault, and that he never intended to hurt her.

Given the foregoing, if the jury believed Jones's testimony and found that C. W. was not credible, it would not be authorized to convict him of battery *or* aggravated battery. Put another way, Jones presented an "all or nothing" defense.[16] Indeed, when the court declined to give the requested instruction, it correctly stated: "He said he didn't do it. So either he did commit the aggravated battery or nothing. He didn't say he committed a battery at all." And Georgia courts have repeatedly held that when a defendant argues that he did not commit the charged offense, a trial court does not abuse its discretion in declining to charge the jury that it is authorized to find

---

[16] *See, e.g.*, *Nguyen v. State*, 296 Ga. App. 853, 857 (1) (a) (676 SE2d 246) (2009) (explaining that the record demonstrated an "all or nothing" defense strategy when the defendant contended that he was not guilty of any crime).

the defendant guilty of a lesser-included offense.[17] Thus, the trial court did not abuse its discretion in declining to do so.

(b) Finally, Jones argues that the trial court abused its discretion by allowing the State to introduce extrinsic evidence of a prior aggravated battery against a pregnant woman in Florida. Again, we disagree.

Prior to trial, the trial court ruled that Jones's Florida conviction was admissible under OCGA § 24-4-404 (b) as prior-acts evidence, and Jones argues the court erred in doing so. But when the conviction was actually admitted at trial during Jones's testimony, the trial court's instruction to the jury indicated that it admitted the conviction under a different statute. Specifically, *after* Jones testified at length as to his version of events on the night in question, which directly contradicted C. W.'s

---

[17] *See Horne v. State*, 333 Ga. App. 353, 361 (5) (b) (773 SE2d 467) (2015) (holding that a jury instruction on battery as a lesser-included offense of aggravated battery was unwarranted when the defendant asserted that the victim's injury was self-inflicted and he denied committing the offense); *Allen v. State*, 247 Ga. App. 10, 17 (4) (b) (543 SE2d 45) (2000) (holding that the trial court did not err in declining to give a jury instruction on battery as a lesser-included offense of aggravated battery when the defendant claimed that the victim was injured by accident, in which case no battery was committed at all); *see also Ingram v. State*, 317 Ga. App. 606, 607 (1) (732 SE2d 456) (2012) (holding that trial counsel was not ineffective for deciding against requesting a jury instruction on a lesser-included offense in order to pursue an all-or-nothing defense).

testimony, the State sought to admit evidence of the prior conviction at issue. But

before admitting the evidence, the trial court instructed the jury as follows:

> Ladies and gentlemen of the jury, I'm going to give you another limiting
> instruction. I charge you that in determining the credibility or
> believability of a witness and any testimony by them in court, you may
> consider where applicable evidence offered to attack the credibility or
> believability of any such witness, which would include evidence of a
> felony conviction, that is, proof that the defendant has been convicted
> of other offenses which may be presented to you at this time. .

Thus, it appears that the trial court admitted Jones's prior conviction solely for the

purpose of determining his credibility and not for any of the purposes delineated in

Rule 404 (b).[18] Regardless, a trial court's evidentiary rulings must be affirmed "absent

an abuse of discretion."[19]

---

[18] *See* OCGA § 24-4-404 (b) ("Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."). Prior to trial, the trial court provided reasoning for its decision to admit Jones's prior conviction under Rule 404 (b) and expressly stated its view that the prior conviction's probative value substantially outweighed any prejudicial impact. But the court did not reiterate this finding when, during trial, it admitted the prior conviction for the purpose of impeachment.

[19] *Smith v. State*, 292 Ga. 620, 624 (5) (740 SE2d 158) (2013).

And here, while the trial court did not reference the statute by name, OCGA §

24-6-609 (a) (1) provides:

> For the purpose of attacking the character for truthfulness of a witness
> . . . [e]vidence that a witness other than an accused has been convicted
> of a crime shall be admitted subject to the provisions of Code Section
> 24-4-403 if the crime was punishable by death or imprisonment in
> excess of one year under the law under which the witness was convicted
> and evidence that an accused has been convicted of such a crime shall
> be admitted if the court determines that the probative value of admitting
> the evidence outweighs its prejudicial effect to the accused.[20]

And as we have previously explained, the introduction of evidence of a prior felony

conviction is intended to "afford the jury a basis to infer that the witness's character

is such that he would be less likely than the average trustworthy citizen to be truthful

---

[20] Subsection (a) (1) of OCGA § 24-6-609 applying to prior crimes of the accused, which are less than ten years old, "does not require the probative value of admitting the prior crime 'substantially' outweigh its prejudicial effect, as was the case under the prior law and is presently the case under subsection (b) of OCGA § 24-6-609, which applies when the prior crime is more than ten years old." *Jordan v. State*, 344 Ga. App. 267, 272 (5) n.9 (810 SE2d 158) (2018); *see Robinson v. State*, 336 Ga. App. 627, 631 (3) (785 SE2d 304) (2016) (noting that, because the defendant's prior convictions were less than ten years old, the more stringent "substantially outweighs standard" does not apply as to the admission of those convictions). It is undisputed that Jones's prior conviction for aggravated assault is less than ten years old.

in his testimony."[21] Indeed, the introduction of evidence of a prior crime is thus a "general attack on the credibility of the witness."[22]

As previously discussed, Jones testified that C. W.'s injuries resulted from an accident, which *she* caused, directly contradicting evidence presented by the State that he purposefully threatened her, lit her on fire, and raped her. Specifically, Jones contends that his prior conviction was inadmissible under OCGA § 24-4-403[23] because it was submitted for the sole purpose of showing that he had a history of violence against women. But contrary to his arguments, the probative value of Jones's prior conviction was high because his credibility was central to the outcome of his trial. Indeed, Jones took the stand, categorically denied committing the charged

---

[21] *Jordan*, 344 Ga. App. at 272 (5) (punctuation omitted); *accord Robinson*, 336 Ga. App. at 631 (3).

[22] *Jordan*, 344 Ga. App. at 272 (5) (punctuation omitted); *accord Robinson*, 336 Ga. App. at 631 (3); *see* Ronald L. Carlson and Michael Scott Carlson, CARLSON ON EVIDENCE, p. 312 (6th Ed. 2018) ("Rule 609 (a) (1) concerns impeachment of a witness' truthfulness with evidence of a crime that is punishable by . . . imprisonment in excess of one year under the law which the witness was convicted.").

[23] *See* OCGA § 24-4-403 ("Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.").

18

offenses, and blamed *the victim* for setting them both on fire.[24] Furthermore, the trial court reduced the risk of unfair prejudice by instructing the jury that Jones's prior conviction was being admitted for the jury to consider in determining his truthfulness.[25] And, of course, we should not assume that the jury "paid no attention to some portions of the charge; but on the contrary the presumption is that the jury pays attention to and correctly applies all of the charge."[26]

---

[24] *See Jordan*, 344 Ga. App. at 272 (5) (holding that the defendant's prior conviction, which was admitted under OCGA § 24-6-609 (a) (1), was admissible when, *inter alia*, the defendant "placed his credibility directly at issue by testifying at trial that he took no part in the armed robbery and that he actually tried to discourage the robber by telling him that the victim did not have anything to take"); Carlson, *supra* note 22, p. 313 ("Once a criminal defendant chooses to testify, he places his credibility in issue as does any witness. . . . Felonies not involving dishonesty are admitted if the court determines the probative value of admitting this evidence outweighs its prejudicial effect to the accused." (footnotes omitted)).

[25] *See Hughes v. State*, 341 Ga. App. 594, 596-97 (1) (802 SE2d 30) (2017) (holding that evidence was not unfairly prejudicial, in part, because the court gave a limiting instruction as to how that evidence should be considered); *Kim v. State*, 337 Ga. App. 155, 159 (786 SE2d 532) (2016) (noting that, in finding that evidence was admissible under OCGA § 24-4-403, the trial court gave a limiting instruction to the jury and qualified jurors under oath are presumed to follow the trial court's instructions).

[26] *Bryant v. Chasteen*, 121 Ga. App. 446, 446 (1) (174 SE2d 192) (1970) (punctuation omitted).

Moreover, Jones's prior aggravated-assault conviction was not the sole evidence that he had a history of violence against women. Indeed, well before the conviction was admitted into evidence during Jones's testimony, C. W. had already testified at length as to the extremely violent and abusive conduct that took place during their marriage.[27] Under these circumstances, the trial court did not abuse its discretion in admitting Jones's prior conviction for aggravated battery on a pregnant woman for the jury to consider in determining whether he testified truthfully.[28] And

---

[27] *See Jordan*, 344 Ga. App. at 272 (5) (holding that one factor reducing the prejudicial impact of evidence of the defendant's prior felony conviction—which was admitted under OCGA § 24-6-609 (a) (1)—was that the jury did not learn he was a criminal solely from the admission of the evidence).

[28] *See Robinson*, 336 Ga. App. at 631 (3) (holding that the trial court did not abuse its discretion in admitting evidence of a defendant's prior felony conviction when, *inter alia*, the defendant's credibility was central to the dispute and both the prior and current offenses were violent crimes); *Jones v. State*, 318 Ga. App. 105, 107 (3) (733 SE2d 407) (2012) (holding that the trial court did not abuse its discretion in admitting evidence of a defendant's prior aggravated-assault conviction when, *inter alia*, his credibility was "obviously open to attack"); *Hopkins v. State*, 309 Ga. App. 298, 300 (1) (709 SE2d 873) (2011) (holding that the trial court did not abuse its discretion in admitting the defendant's prior burglary conviction in a prosecution for shoplifting when the defendant testified that he had no intention of committing theft, making his credibility highly relevant to the jury's decision); *see also Eubanks v. State*, 332 Ga. App. 568, 570 (1) (774 SE2d 146) (2015) (noting that the probative value of defendant's prior conviction was not substantially outweighed by unfair prejudice, in part, because the trial court gave a limiting instruction to reduce the risk of undue prejudice). We acknowledge Jones's argument that his prior Florida conviction was misleading to the jury because Florida's statute for aggravated battery

because Jones's prior conviction for aggravated battery of a pregnant woman was admissible under OCGA § 24-6-609 (a) (1), we need not separately address the trial court's pretrial ruling that the conviction was also admissible under Rule 404 (b).

In sum, because the trial court violated OCGA § 17-8-58 (c) by expressly commenting on Jones's guilt before the jury, we reverse Jones's convictions and remand the case for a new trial as required by the statute.

*Judgment reversed and case remanded. Gobeil and Hodges, JJ., concur.*

---

against a pregnant woman is different than Georgia's aggravated-battery statute. Nevertheless, we find that any difference between the two statutes did not render the Florida conviction unfairly prejudicial when it was admitted for the sole purpose of challenging Jones's credibility, which he placed in issue, and the trial court instructed the jury in that regard. Indeed, if a defendant chooses to testify, a prior felony conviction is admissible for impeachment purposes, so long as the court determines that its probative value substantially outweighs its prejudicial effect. *See Stroud v. State*, 301 Ga. 807, 811 (II) (804 SE2d 418) (2017) ("[I]f the defendant testified, evidence of prior felony convictions was admissible for impeachment purposes upon the trial court's determination that its probative value substantially outweighed its prejudicial effect."). And for the reasons discussed *supra*, including the centrality of the defendant's credibility to the outcome of the case, the trial court did not abuse its discretion in making this determination. *See Johnson v. State*, 328 Ga. App. 702, 709 (3) (b) (760 SE2d 682) (2014) (holding that the trial court did not err in concluding that given the nature of the charges in the case and the fact that the credibility of the victim and the defendant were central to the issues, the probative value of the prior conviction substantially outweighed any prejudicial effect).